SUSANNA WINKLER, Respondent, v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, Appellant.

St. Louis Court of Appeals.    Opinion Filed February 8, 1921.

1. NEGLIGENCE: Switching Cars: Pullman Car Janitress Injured: Custom for Cleaners to Stay Inside Cars Being Switched: Knowl-

Winkler v. Terminal Ry. Assn. of St. Louis.

edge: **Duty Toward Cleaners Stated.** Where it was customary for passenger car cleaners to remain in the cars while they were being switched to the station from the yards of a terminal railroad association, and this was known to such association and to its employees, and in making couplings they knew or should have known that the cleaners were likely to be within the trains, a duty arose on the part of the terminal association's employees to use care in switching trains not to cause injuries to such cleaners.

2. ———: ———: ———: ———: **Evidence: Petition Sufficient to Sustain Proof of Custom.** In an action for damages for personal injuries by a janitress employed by the Pullman Company, whose duties consisted in cleaning Pullman cars, where the petition alleged that while she was engaged in her duties, which fact was known or should have been known to the defendant, its servants and employees, carelessly and negligently ran its locomotive against the car in which plaintiff was working; etc., then, as evidence of such actual or constructive knowledge on the part of defendant's servants, plaintiff had the right to produce evidence of such fact that it was customary for the cleaners to stay in the cars while they were being switched, and if such fact was known to the defendant's employees or should have been known by the exercise of ordinary care, there was a duty resting upon them to exercise proper care toward plaintiff and other cleaners in switching and coupling trains.

3. **DAMAGES: Measure of Damages: Evidence: Future Pain Proper Element: Instructions.** In an action for damages for personal injuries, an instruction on the measure of damages allowing a recovery for future pain was not erroneous when there was evidence to support that proposition.

4. **WITNESSES: Nonexpert: Opinions: May Give Opinion as to Apparent Health before Injury.** A non-expert may give his opinion as to the apparent health, both before and after the accident, of the injured plaintiff whom he has had an opportunity to observe.

5. **TRIAL PRACTICE: Petition in Two Counts: Election: Evidence Admitted Authorized by Abandoned Count : Not Error.** In an action for damages by a janitress employed by the Pullman Company and injured while engaged in cleaning the inside of one of its cars which was standing in the yards of defendant railroad association, caused by a locomotive running against the car, where the petition was in two counts and testimony was permitted from witnesses to the effect that no signals, by bell or otherwise, were given, and that at the time the evidence was admitted the second count was before the court and it contained allegations authorizing the evidence, and at the conclusion of the plaintiff's case the court compelled plaintiff to elect as to which count of the petition she would proceed, and thereupon plaintiff elected to abandon the

206 M. A.—15

second count which contained the allegation in reference to the failure to give signals, complaint could not be made by defendant that testimony was admitted concerning the signals on the ground that such failure to give signals was not pleaded.

Appeal from the Circuit Court of the City of St. Louis.— *Hon. John W. Calhoun,* Judge.

AFFIRMED.

*J. L. Howell* and *W. M. Hezel* for appellant.

(1) The court erred in permitting plaintiff to amend her amended petition at the close of her case in chief, "to conform to the proof." Because there was no proof of usage and custom shown as prevailing on the hill track, which was not in the Twenty-first street yard. To make a custom effective, it must be shown to have been general, uniform, certain and notorious. McMiens v. United Rys. Co., 274 Mo. 326; Paukey v. Railway Co., 180 Mo. App. 185; Shields v. Railway, 87 Mo. App. 637. (2) The court erred in failing to give to the jury the instruction in the nature of a demurrer to the evidence at the close of plaintiff's case in chief, as requested by defendant. The case pleaded must be proven and the case proven must be pleaded. Kendrick v. Harris, 171 Mo. App. 208; Small v. Ice & Fuel Co., 179 Mo. App. 461. This was the first train made up on any "hill" track. Therefore, there could have been no usage and custom of cleaners being in cars at that place. McMein v. U. Rys. Co., 274 Mo. 326, 231; Paukey v. Ry. Co., 181 Mo. App. 185, 199; Shields v. Railway, 87 Mo. App. 637. (3) The court erred in failing to give the instruction in the nature of a demurrer to the evidence, at the close of the whole case, as requested by the defendants. Plaintiff's case was in nowise aided by defendant's testimony, and the authorities under point 2 are applicable here. (4) The court erred in giving plaintiff's instruction No. 1. her main instruction. It is broader than the evidence or the pleadings. State ex rel v. Ellison, 270 Mo. 654; Degonia v. Railroad, 224 Mo. 589; Small v. Ice & Fuel Co., 179 Mo. App. 461. (5) The court erred in giving plaintiff's in-

struction No. 3 the instruction on the measure of damages. a. Because it allows recovery for future pain, though the injury complained of is said by plaintiff's evidence to have caused paralysis of the sensory nerves—that is the absence of sensation or feeling. *Quod est demonstrandum.* (6) The court erred in permitting Lena Kramm, a lay witness, over objection, testify that plaintiff before the accident, was "always healthy." She was a lay witness and did not state the whole facts upon which her opinion was based. Norris v. Railroad, 239 Mo. 695, 711; Atkinson v. Am. School of Osteopathy, 199 Mo. App. 270. (7) The court erred in permitting, over objection and motion to strike, testimony as to whether signals, by bell or otherwise, were heard by witnesses. There was no allegation in the petition of negligence in failing to give a signal nor any usage or custom of giving signals.

*Leonard, Sibley & McRoberts* for respondent.

(1) The amendment of the petition during the course of the trial, while unnecessary, was not improperly allowed and did no harm to defendant. Lightner v. Dunham, 195 S. W. 1055; Kinney v. Met. St. Ry. Co., 261 Mo. 97, 169 S. W. 23; Rober v. K. C. Rys. Co., 204 S. W. 739. The track and train in question were in the Twenty-first Street yards, and the custom and usage was shown to prevail throughout not only these yards, but in all other yards about Union Station. Also, defendant took this position at the trial and cannot change its position now on appeal. (2) Defendant's instruction in the nature of a demurrer to the evidence tendered at the close of plaintiff's case was properly refused. Then, defendant, who afterwards put on its own testimony in defense, cannot now complain of the refusal of the court to give this instruction. Stauffer v. Railroad, 243 Mo. 305. (3) Defendant's instruction in the nature of a demurrer to the evidence tendered at the close of the whole case was properly refused. Plaintiff's evidence was even strengthened by the testimony and admissions of defendant's witnesses, and by the attitude of defendant's counsel, and the position taken by him at the trial. (4)

Plaintiff's instruction on the merits was not broader than the proof. Were it broader, it would still be harmless. (5) The instruction given on the measure of damages was proper. Plaintiff had suffered pain all the time since she was injured, and was still so suffering at the time of the trial, and her injuries were permanent. (6) The testimony of Lena Kramm was properly admitted. Partello v. Railroad, 217 Mo. 645; Fulton v. Met. St. Ry. Co., 125 Mo. App. 239; Heinback v. Heinbach, 274 Mo. 301. The witness even gave the facts upon which she based her opinion. Then, no proper objection was made by defendant. At worst, the testimony was merely cumulative upon a question not in dispute. This was not reversible error. Porterfield v. Am. Surety Co., 210 S. W. 124; Meredith v. Krauthoff, 191 Mo. App. 149. (8) The negligence of defendant in failing to sound a bell or give other signal or warning was pleaded in count 2 of the petition. Then, no objection was made by defendant to the evidence because not pleaded.

BIGGS, C.—Plaintiff was employed as a janitress by the Pullman Company, and while engaged in cleaning the inside of one of its cars, which was standing in the yards of the defendant Terminal Railroad Association, received serious personal injuries by reason of the alleged negligence and carelessness of defendant's employees in running one of its locomotives against said car, in which plaintiff was working as a car cleaner, thereby causing a great jolt and shock, which threw plaintiff from her feet, head foremost against the door frame of the door leading into the smoker and washroom.

There was a verdict and judgment for plaintiff for $6500, which is not complained of as being excessive, so it will be unnecessary to state the extent of plaintiff's injury.

After an unveiling motion for new trial, defendant appeals, assigning error as follows: (1) Error in permitting plaintiff to amend her petition to conform to the proof at the close of her case; (2) failure to sustain de-

murrer to the evidence at close of plaintiff's case and also at the close of the whole case; (3), error in giving plaintiff's main instructions; (4), error in giving an instruction on the measure of damages, and (5) error in the admission of evidence..

The main part of the petition with the amendment that the court permitted at the close of plaintiff's case in italics is as follows:

Plaintiff further states that on or about the third day of February 1917, and for a long time prior thereto, she was in the employ of the Pullman Company as a janitrees, her duties consisting in cleaning Pullman cars; that on or about said date she was ordered to clean one of the cars belonging to and operated by the Pullman Company, which said car was standing at rest on the tracks in the yards owned and used by defendant at Twenty-first Street near Clark Avenue; *that it had at said time and before said time long been the custom and usage for cars to stand on said tracks to be cleaned by employees of the Pullman Company and for said employees of the Pullman Company to be engaged in work on the interior of said cars when said cars were coupled and were switched in the said yards and conveyed to Union Station in the City of St. Louis, Missouri;* that while engaged in the duties aforesaid, as defendant knew or should have known *from the custom and usage aforesaid,* said defendant, by its servants and employees carelessly and negligently ran one of its locomotives upon and against said Pullman car in which plaintiff was working; that the said collision caused a great jolt and shock, which threw plaintiff from her feet," etc.

The facts are these: The defendant owned all of the railroad tracks in and about Union Station, After trains on various roads arrive in the station shed, the defendant takes charge of the cars and moves them to various yards owned and controlled by it, where the cars are cleaned and made ready for another trip, after which the defendant makes up these trains and returns them to the Union Station shed in time for their departure.

One of these yards was known as the Twenty-first street yard, which lay just west of the Union Station. This yard contained paralled tracks running in a general direction north and south, the west 26 of said tracks at the north end lay in a depression about four feet below the east three tracks. At the east end of the yard there were three or four track situated on what it known as "the hill" or "the dumps" which were above the remaining tracks in the yard at their north end, but at the south end were on the same level as the other tracks. All of said tracks at the south end were on the same level and joined the other tracks running east and west owned by defendant and by which cars were switched in and out of said station.

On the 26 tracks referred to which were in the depression, Pullman cars were constantly standing, having been switched there by the defendant from trains arriving at Union Station, and car cleaners were constantly working inside and outside of the cars during the hours of the day. In order to prevent accident by engines moving any of these cars while being cleaned, it was required that a blue flag be displayed at the end of the car when the cleaners were engaged cleaning the outside or the roof of the inside of the cars, but not when the cleaners were cleaning the floors. It frequently happened, especially on trains that were leaving about the noon hour of each day, that the cleaners would not be through cleaning the car at the time it was necessary to move the cars from the yards into the Union Station. On these occasions cleaners would remain in the cars while they were being switched about the yards and would be taken around to the Union Station, where they would finish their work and then return to the yards, which was only a short distance. This was especially true and nearly always happened in cases of trains departing in the mornings or at about noon of each day. The defendant did all of the switching in these yards, and the employees of the Pullman Company, as stated, were not required to put up any signals or flag warnings when they were working on the floors of the cars.

At the time in question, on the morning of February 3, 1917, there was a special train, known as the "Fur Buyers Special," which had to be made ready to depart from the Union Station at about the noon hour of that day. This train had arrived late the night before, and plaintiff with others who had been working in other yards than the Twenty-first street yards, were put to work cleaning the inside of the cars of this special train. This train was composed of an observation car, four sleepers, a diner and a combination club and baggage car. Plaintiff and others started cleaning the train from the north end, and had cleaned all of the cars and were working in the last car or what is known as the "club car" at the time of the accident. The train in question was standing on one of these so-called hill tracks and the one furtherest to the west and just adjoining the other 26 tracks which were in the depression.

At about 9 o'clock in the morning of that day and while the plaintiff was leaning over in a stooping position cleaning spittoons in the smoking room of said club car, one of defendant's engines was coupled on to the south end of said car, for the purpose of moving the train into Union Station. The unusual impact at the time of the coupling was the alleged cause of plaintiff's injuries. It is not asserted by defendant that the record does not contain sufficient evidence authorizing the jury to find that this coupling was made with such force as to make it an unusual coupling, and thereby establish a case for the plaintiff. According to plaintiff's witnesses, the coupling was of such force as to throw the car violently against the car back of it and to cause water which was in a bucket on the floor to be thrown out on the floor of the car and also to scatter about the heavy spittoons which plaintiff at the time was cleaning. Also that by the impact plaintiff was thrown violently against the edge of the door frame of the doorway into the smoking room of the car, and that by reason thereof a long gash was cut in her head, causing her nose to begin bleeding, although her nose was not struck directly, which blow resulted in a

concussion of the brain, the skull being fractured and some bone tissues being destroyed. This according to the opinion of her family physician. A general paralysis of the left side of plaintiff's body resulted from the injuries received.

It was clearly established by some of plaintiff's witnesses and also by the defendant's witnesses, that it was customary for these cleaners to remain in the cars while they were being switched to the Union Station from the Twenty-first street yards. This was known to the defendant and to its employees, and in making couplings with these trains in the Twenty-first street yards they knew or should have known that the cleaners were likely to be within the trains. Therefore a duty arose on the part of defendant's employees to use such care in switching trains as not to cause injuries to such cleaners.

Defendant, however, contends that inasmuch as this train was situated on what is known as the hill tracks elevated above the remaining tracks in the Twenty-first street yards, and inasmuch as it appeared that this was the first time that trains had been made up on such hill tracks, that therefore there was no duty on the part of defendant's employees to anticipate that there would be any cleaners within such train. It is therefore asserted that it was error to permit the amendment to be made to the petition, so as to conform to the proof, because there was no proof of usage and custom prevailing as to the so called hill track in the matter of the cleaners remaining in the cars when the same were being switched.

The question of this usage or custom is only evidence of knowledge on the part of defendant's employees that the car cleaners were likely to be in the cars at the time they were switched. It does not appear to us that any amendment to plaintiff's petition was necessary. Plaintiff had alleged, that while she was engaged in her duties, which fact was known or should have been known to the defendant, its servants and employees carelessly and negligently ran its locomotive against the car in which plaintiff was working, etc. As evidence of such actual or

constructive knowledge on the part of defendant's servants, plaintiff would have had the right to produce evidence of the fact that it was customary for the cleaners to stay in the cars while they were being switched, and if such fact was known to the defendant's employees or should have been known by the exercise of ordinary care, there was a duty resting upon them to exercise proper care toward plaintiff and other cleaners in switching and coupling trains.

The train in question was on a track, the south end of which was certainly a part of the Twenty-first street yards, and the north end of said track was only ten feet from said yards at best, and on an elevation four feet above. The defendant's employees knew this train, like all other trains, was to be by them switched into Union Station for the purpose of departure on its route. They were ordered to take this ''Fur Buyers Special'' around to Union Station, and it was like any other train that had been made up or was being made up for departure. They knew or should have known that said train, like other trains, was likely to have therein cleaners engaged in their work. As stated, this train arrived late the night before, and was being cleaned for the purpose of departing at noon on the day in question. Defendant's employees coupled on to the train at 9 o'clock in the morning on this track in the Twenty-first street yards. Whether the train was on a track in the depression in the Twenty-first street yards, or on the hill track immediately adjoining them, we think makes no difference.

Furthermore, the defendant all through the trial tried the case on the theory that this so called hill track was a part of the Twenty-first street yards. While the amendment was not necessary in our judgment, as the so called custom was only evidence of either actual or constructive knowledge on the part of defendant's employees of the fact that the cleaners were at work in the cars, it is clear that the action of the Court in permitting the amendment did the defendant no harm.

While, of course, the defendant's evidence is to the effect that the coupling as made was the ordinary kind and not unusual in character, there was substantial evidence on the part of plaintiff to the effect that the engine collided with the club car in an unusual way and with great force, which, as stated, resulted in the injuries to plaintiff. It follows from this there was no error in permitting the plaintiff to amend her petition at the close of her case, and this necessarily disposes of the assigned error in refusing to sustain defendant's demurrer to the evidence at the close of plaintiff's case and also at the close of the whole case, and also its objection to plaintiff's main instruction which is based upon the same ground, to the effect that the evidence was insufficient to show an effective custom.

Defendant asserts that the main instruction for plaintiff is broader than the petition and the evidence. Its argument is based on the proposition that the evidence of usage and custom as to the so called "hill track" was insufficient. In view of what is herein said in regard to said usage and custom, we do not think the rule of law, that the instruction must not be broader than the evidence and pleading, was violated.

Defendant complains of the instruction on the measure of damages, because it allows a recovery for future pain, when it is said that there was no evidence to support that proposition. It appeared in the evidence that plaintiff was paralyzed on her left side and had no feeling therein. However, she did state that at the time of the trial she still had pain in her head. It was shown that she had suffered pain since her injuries, and at the time of the trial was still suffering pain, and there was ample evidence showing that her injuries were permanent. While her left side was paralyzed and doubtless caused her no pain, still there was evidence that she had pain in her head and was at the time of the trial still suffering pain.

There was no error in the instruction.

It is further asserted that error was committed in permitting a lay witness to testify, over the objection of

the defendant, that plaintiff before the accident "was always healthy." This witness had worked by the side of the plaintiff for a long period of time, and states plaintiff was always regular in her work, and in an answer to a question, said that the plaintiff before the accident was always healthy and worked. Even though this statement from the witness was improperly admitted, it could not cause a reversal of the case under the circumstances disclosed in the record as to the condition of plaintiff's health both before and after the accident.

Furthermore, in Partello v. Railroad, 217 Mo. 645, 117 S. W. 1138, it is held that a non-expert witness may give his opinion as to the apparent health of the injured plaintiff whom he has had an opportunity to observe.

The last error alleged by the defendant is also without merit. Complaint is made that testimony was permitted from witnesses to the effect that no signals, by bell or otherwise, were given when the engine came on to the track for the purpose of making the coupling, for the reason that such failure to give signals was not pleaded. The evidence was not objected to on this ground. The petition was in two counts, and at the time the evidence was admitted the second count was before the court, and it contained allegations authorizing the evidence. At the conclusion of the plaintiff's case, the court compelled the plaintiff to elect as to which count of the petition she would proceed, and thereupon plaintiff elected to abandon the second count, which contained the allegation in reference to the failure to give signals.

We think the case was fairly tried, and that the judgment should be affirmed.

PER CURIAM:—The foregoing opinion of Briggs, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Reynolds, P. J. Allen* and *Becker, JJ.,* concur.