## JASPER E. NOLAND, Respondent, v. MORRIS & COMPANY, Appellant.

### In the Kansas City Court of Appeals, June 26, 1922.

1. **APPEAL AND ERROR: Where There are Conflicting Versions as to Happening of a Controversy, not Province of Appellate Court to Determine Issue as to Which is True.** Where there are conflicting versions as to the happening of a controversy, it is not the province of an appellate court to determine the truth of either, but such question is one for the jury.

2. **MASTER AND SERVANT: Assault and Battery: Master Liable for Assault by Servant Acting in Scope of his Employment, Even Though Servant had Ulterior Malicious Motive in Committing Assault.** In an action for damages for assault and battery committed by a servant while acting in the scope of his employment, the master is liable even though the servant had an ulterior malicious motive.

3. **———: ———: Scope of Employment: Whether Act Within Scope of Employment Determined by Facts in Each Case.** Whether an act is within the scope of the employment is a matter to be determined by the facts in each case, with a view to the surrounding facts and circumstances, including the character of the employment and the nature of the wrongful act.

4. **———: ———: ———: Whether Employee at Time of Assault on Plaintiff was Acting Within Scope of Employment, Held Question for Jury.** Where an employee, engaged in pushing a wheelbarrow

1—212 M. A.

(1)

loaded with brick on the premises where his employer was erecting a building, struck plaintiff with a brick felling him to the ground unconscious because plaintiff failed to get out of employee's way, *held*, that the question of whether at the time of the assault the employee was acting in the scope of his employment was for the jury.

5. ———: ———: ———: The Fact that Employee's Act in Assaulting Plaintiff, was Result of Erroneously Carrying Out Order of Foreman, Cannot Affect Question of Whether the Act of Employee was Within the Scope of His Employment, Such Issue under the Evidence Being One for the Jury.  Where the foreman of defendant ordered an employee to knock plaintiff out of his way, not intending that the employee should assault plaintiff, but that he should push on past plaintiff with his wheelbarrow and thereby compel plaintiff to move aside, the fact that the employee may have erroneously chosen a different and unexpected means to accomplish the desired object, does not affect the question of whether the assault was committed by defendant's employee while within the scope of his employment, as the issue under the evidence, was one for the jury's determination.

6. ———: ———: ———: The Fact That Act of Employee Hindered Business of Master Rather Than Aided it, Held Immaterial as to Whether the Act was Within the Scope of His Employment.  The fact that act of employee actually hindered and obstructed master's business rather than aided or assisted it would have no bearing on the question of whether employee's act was within the scope of his employment.

7. ———: Employer not Relieved of Liability by Reason of Employee's Act Being the Result of Mistake of Judgment.  An employer is not relieved of liability by reason of the fact that the employee's act was the result of a mistake of judgment.

8. APPEAL AND ERROR: Sustaining Objection to Testimony Held Recognition that Objection was not Made Too Late.  The court in sustaining an objection to testimony recognized that the objection did not come too late.

9. TRIAL PRACTICE: Where Portion of Statement was Admissible, Overruling of Objection Made to Whole Thereof, not Error.  Where the first part of a statement was admissible in evidence, and objection was made thereto as a whole, the trial court cannot be convicted of error in overruling the objection.

10. EVIDENCE: Res Gestae: Exclamation of Foreman Regretting Order to Employee Made Immediately after Assault upon Plaintiff by Employee, Held Admissible as Part of Res Gestae.  Where defendant's

foreman ordered an employee to knock plaintiff out of the way, and the employee struck plaintiff with a brick seriously injuring him, the statement and exclamation of the foreman made immediately after the happening of the assault and in the presence of all the parties, that he "oughtn't have said anything to that nigger," *held* admissible as a part of the *res gestae*.

11. ————: ————: Contemporaneous, Unpremeditated and Spontaneous Explanation of Main Fact, Held Admissible as Part of Res Gestae. While a statement to be admissible in evidence as a part of the *res gestae* must be connected and contemporaneous with the main fact, it does not have to be precisely concurrent in time, but is sufficient if the declaration is so clearly connected with the main fact to be proved that the former can be said to be the unpremeditated, spontaneous explanation of the cause.

12. APPEAL AND ERROR: Objection to Evidence not Made in Trial Court not Subject to Review on Appeal. An objection that evidence was inadmissible as being a conclusion of the witness, is not subject to review on appeal where the same was not made in the trial court.

13. EVIDENCE: Statement Made by Foreman to Employee Acting Within Scope of Employment, Held Admissible. Evidence that a foreman ordered an employee to knock plaintiff out of his way, and the employee in executing the order assaulted plaintiff, seriously injuring him, was admissible as part of the *res gestae*, as the employee at the time of the assault was acting within the scope of his employment.

14. TRIAL PRACTICE: Where no Objection or Motion to Strike out was Made at Time Evidence was Given, an Objection Made Thereafter Held too Late. Where no objection was made to evidence when given by plaintiff, and no motion made to strike it out until after the examination had proceeded for some time an objection then made, *held* too late.

15. ————: Where Evidence is Admitted in Record Without Objection, an Objection Made Thereafter to Same Testimony, Held Properly Overruled. Where evidence is admitted without objection, an objection made thereafter to same testimony, *held* properly overruled.

16. CONTINUANCE: Denial by Court of Continuance Where no Affidavit of Surprise was Filed, Held not Error. Where defendant orally moved court for a continuance on the ground of surprise so as to procure the testimony of an absent witness who had given his deposition for the purpose of further refuting certain testimony of plaintiff, the court did not err in denying the continuance, the defendant having filed no affidavit of surprise.

17. **INSTRUCTIONS: Where Refused Instruction was Properly Covered by Given Instruction, Court did not Err in Refusing Same.** Where the subject-matter of a refused instruction was properly covered and submitted in a given instruction, the court did not err in refusing the same.

Appeal from the Circuit Court of Jackson County.—*Hon. Samuel A. Dew, Judge.*

AFFIRMED.

*Elon Levis* and *Atwood, Wickersham & Hill* for respondent.

*Warner, Dean, Langworthy, Thomson & Borders* for appellant.

TRIMBLE, P. J.—Plaintiff, in an action for damages resulting from an assault made upon him by defendant's employee, recovered judgment in the sum of $3000 and defendant appealed.

No attack is made upon the petition now, and none was made, save an oral objection to the introduction of any evidence thereunder; and it appears to be tacitly understood by counsel on both sides that, so far as the pleadings are concerned, they presented the case on two issues, namely, (1) whether the assault was committed by defendant's employee, in so doing, within the scope of his employment, thereby rendering defendant liable under the doctrine of *"respondeat superior,"* and (2) whether the defendant negligently kept and maintained in its business the assaulting employee, known by defendant to be of vicious and dangerous propensities, subject to violent outbursts and likely to commit an assault at any time.

However, during the trial, the second issue above mentioned was withdrawn from the consideration of the jury, and the case was submitted only upon the first issue herein above stated.

Defendant, operator of a large meat packing plant, was having a new building erected in its yards. Plain-

tiff, a white man about thirty-five years of age, had a
motor delivery truck, and, with the assistance of a man
named Ford, was engaged in delivering building material
in the defendant's yard.  He drove into the northwest
corner of the yard with a load of thirty sacks of cement
and fifty slabs of fire-clay, and, after stopping at the
receiving office near the north end of the yard, obtained
a receipt for the material he was delivering, and was
directed to take his load to the south part of the yard
and put the material where it was wanted.

The building being erected was in the southern part
of the yard, near the east side thereof.  Some railroad
switch-tracks, running approximately north and south
through the yards, lay a short distance west of this build-
ing; and between them and the building was a pile of
brick.  West of this brick, and about two feet distant
therefrom, a plank runway twelve inches wide ran north
and south, over which employees transported brick in
wheelbarrows past the brick pile south to the hoist at
the side and near the south end of the building.

Plaintiff's truck could not cross the switch-tracks,
and, after receiving directions to take his load to the
south part of the yard, he drove south along the west
side of said tracks until he was about opposite the hoist,
where he was directed by the foreman, Sturgis, to put
the cement near the hoist and then to put the slabs by
the brick pile.  After unloading the cement and placing
it close to the hoist, which required plaintiff and his
helper to carry the sacks across the tracks to the hoist,
plaintiff backed his truck some thirty or forty feet north
along the west side of the switch-tracks until he was
opposite the brick pile.  The fire-clay slabs were each
three inches thick, twelve inches wide, twenty-four inches
long, and weighed nearly a hundred pounds.  Plaintiff's
helper, Ford, remained on the truck and handed the
slabs to plaintiff and he carried them across the switch-
tracks, to and over the plank runway, and piled them in
the two-foot space between the runway and the brick
pile where he had been told to put them.

After having carried over quite a number of these slabs, he noticed, on his way across with a slab, that one of the piles he had made was leaning over toward the runway as if it were going to fall. After laying down the slab he was carrying, he began rearranging the pile that was threatening to fall, and in doing this he was standing between the runway and the slabs with his back to and "right up against" the runway. A wheelbarrow loaded with brick being pushed south along the runway could not get by plaintiff unless he moved, and he says he could not have gotten out of the way unless he got back across over to the west side of the runway.

While plaintiff was thus on the ground between the east edge of the runway and brick, engaged in straightening the leaning pile, a negro by the name of Thompson pushing a wheelbarrow loaded with brick came south along the runway and reached a point close to where plaintiff stood with his back to and against the runway. Plaintiff had not seen him before, was not acquainted with him, and nothing had theretofore passed between them.

According to plaintiff's testimony, the negro said "Let me get by," Plaintiff, without looking around but continuing to straighten the pile, replied "I will in a minute." The negro said "I want to get by with this load of brick." Plaintiff replied "Well, I will get out of the way, now, when I get this stuff piled up, so they will stand there." To this, the negro replied in a loud voice, "By God, I want you to get out of my way, I want to get by here." The foreman, Sturgis, who was standing near the concrete mixer east of the brick pile and a few feet distant from the negro, said to him "Go on by with the load of brick, get it upon the cage there." The negro again said to plaintiff "I want by here." And the foreman said "If he don't let you by, knock him out of the way—if he don't get out of the way, knock him out of the way." Thereupon the negro said "By God, if you don't get out of the way, I will knock you out of

the way'' and, seizing a brick, struck plaintiff on the left side of the head, felling him to the ground unconscious.

Ford, plaintiff's assistant, was, as stated, in the truck, which was about fifteen to eighteen feet away from and west of the point where plaintiff fell. He was a witness for plaintiff and testified that the negro with the wheelbarrow ''pulled up there'' and plaintiff seemed to be in the way, and the negro Thompson stopped the wheelbarrow. The first this witness noticed or remembered being said was that, just before the negro struck plaintiff, the foreman said to the negro ''If he don't get out of the way, knock him out of the way.'' Whereupon the negro picked up a brick and plaintiff ''raised up and said 'I don't like no negro to talk to me that way.' '' and the negro struck plaintiff with the brick, felling him to the earth.

Ford further testified that, just as quick as he could, he jumped out of the truck and ran to plaintiff to pick him up; that the foreman also hurriedly ran to plaintiff as fast as he could and exclaimed, as soon as he got there and while the two were picking plaintiff up but before they had completely done so, ''I oughtn't to have said anything to that nigger; he is a bad nigger. We had to take him off the ice gang; he is a bad nigger.'' Ford testified that this remark was made just as soon as the two could get to plaintiff to pick him up. He further testified that when the foreman told the negro to go on by with the wheelbarrow he, the foreman, was standing near the concrete mixer at a point east and north of the brick pile, with a part of the pile between him and plaintiff, looking at the negro who was a little north of plaintiff. The pile of brick was about four or five feet high, and longer than it was high, Ford not being able to say how long it was. Plaintiff, however, said it was ten or twelve feet long, and the foreman, defendant's witness, said it was ten feet in length.

After Ford and the foreman, Sturgis, picked plaintiff up, they took him to the Company doctor, and, while doing this, the negro, Thompson, disappeared and has

never been seen since. He never returned to draw his pay for the money due him.

Plaintiff's skull was fractured by the blow. At the hospital a part of the skull was removed, leaving a place about the size of a dollar without any bone covering over it. This place is soft and tender. If plaintiff rubs over it or draws a comb across it, there is a roaring sound. He cannot sleep with that side of his head down. When he stoops suddenly there is of feeling as of something rolling forward and striking, and when he strains or lifts there is a pulling sensation across this place. For sometime after the injury there was a numbness on the right side of his body, and at the time of the trial, nearly two years after the injury, he was suffering headaches and shooting pains in the place where the skull was removed.

The defendant introduced the evidence of two witnesses who testified relative to the assault; Sturgis, the foreman, and a colored man by the name of Williams.

According to Sturgis' testimony the plaintiff was taking *cement* from his truck across the runway to the place where he was to store it, and upon reaching the runway found in his way the negro Thompson wheeling a barrow-load of brick to the hoist, and said to him "Get out of my road, you black son of a ——;" that Thompson went on with his wheelbarrow, delivered his load of brick, and returning, asked plaintiff "Who are you calling a son of a ——?" to which plaintiff replied "You, you black son of a ——," and going to his truck got an iron bar three feet long and was coming toward the negro Thompson when the latter struck him with the brick; that he, Sturgis, was not over twelve feet away and ran to the negro who was picking up another brick, and prevented him from doing further damage by seizing his wrists; that he started around toward them when he heard the argument between them and went on in a hurry.

The colored man, Williams, testified to practically the same words between the man before the assault,

but he says that plaintiff was at or near the *front* end of his truck and reaching around to it, got the iron bar and was coming toward the negro, Thompson, and when plaintiff drew the bar back as if to strike, the negro struck him. After striking plaintiff, the negro left in a hurry and was never seen again. The witness swore the truck was facing north instead of south as plaintiff's evidence said it did; also that the building had progressed so far that fire-clay slabs were no longer needed and plaintiff was delivering cement and not slabs. This witness also said there were others working around there. Just why no others testified is not explained.

Manifestly, it was for the jury to say which of these conflicting versions is true. It certainly is not our province to say which side told the truth, though we feel free to say that we are unable to see anything of the "sheer grotesqueness" in plaintiff's version that counsel for defendant claim to see. If there is anything bizarre or grotesque in plaintiff's story, it is matched fully in that regard in defendant's version as to matters which authorize the jury to refuse acceptance thereof.

If the affair occurred as defendant claims, then doubtless it was a mere quarrel between two workmen arising while they were engaged in the master's business, but in which neither were acting within the course or scope of their employment; and unless at least the negro Thompson was within such scope, the master could not be held liable. Indeed, if defendant's version be true, Thompson himself was not liable, but could be justified on the ground of self defense; and in that event plaintiff got only what he might have expected from a quarrel of his own picking.

If, however, it occurred as plaintiff says it did—and the jury has found that version to be true—then we cannot say that, conclusively, Thompson was not within the scope of his employment when, in order to clear the way for his barrow, he knocked plaintiff out of his way. And this is true, even though the negro at the time he

did it, was *also* actuated by a feeling of anger or malice toward the plaintiff. The getting of the wheelbarrow of bricks along the runway to the hoist was strictly in the line of Thompson's duty to his master, and if, in effectuating that purpose, he knocked plaintiff out of his way, the master is liable even though Thompson had an ulterior malicious motive in his mind. [18 R. C. L. sec. 256, p. 860; Hellreigel v. Dunham, 192 Mo. App. 43, 46, 47; Garretzen v. Duenckel, 50 Mo. 104, 107; Sturgis v. Kansas City Rys. Co., 228 S. W. 861; White-acre v. Chicago, etc., R. Co., 252 Mo. 438, 458.] Defendant's witness, Sturgis, said the soil where the runway was laid was sandy. The runway was, therefore, necessary for the transportation of the brick. It would not have been constructed if it was not needed. And it is a logical inference that it was not at all practicable to turn the wheelbarrow aside and off the runway to go around the plaintiff. Consequently, when the negro, in order to get him out of the way, struck him with the brick, the negro was not stepping aside from his master's work to do something wholly disconnected therefrom and solely to effectuate a purpose of his own. Whether an act is within the scope of the employment is a matter to be determined by the facts in each case, with a view to the surrounding facts and circumstances, including the character of the employment and the nature of the wrongful act; and, under the facts in the case at bar, the question is one of fact for the jury to determine. [18 R. C. L., sec. 254, p. 796.] The foregoing is only emphasized by the alleged fact that the foreman ordered the negro to knock plaintiff out of the way. No doubt he never intended that the negro should do what he did, but only meant that the latter should push on by with his wheelbarrow and thereby compel plaintiff to move aside. But the fact that the servant may have erroneously chosen a different and unexpected means to accomplish the desired object, can make no difference. [18 R. C. L., sec. 255, p. 798.] Consequently, the court did not err in overruling defendant's demur-

rer to the evidence. [Blumenfeld v. Meyer-Schmid Grocery Co., 230 S. W. 132.]

It will not do to say that since the negro's act, in fact, actually hindered and obstructed the master's business rather than aided or assisted it, therefore, the negro was not within the scope of his employment. An employer is not relieved of liability by reason of the fact that the employee's act was the result of a mistake of judgment in that regard. [18 R. C. L., sec. 255, p. 798.] Liability of the master is not governed or controlled by any such narrow test as that. If it were, there would be few cases indeed where liability would exist. Besides it is by no means certain that the knocking of plaintiff out of the way would have caused the leaning pile of slabs to fall upon and obstruct the runway. Indeed there is no evidence that it did fall, but even if such had been certain, that did not conclusively show that the negro's act was done *solely* in furtherance of his own personal malice.

Complaint is made of the admission in evidence of what the foreman said when he reached plaintiff at the time the two men (Sturgis and Ford) ran the short distance to plaintiff to pick him up. The witness Ford having testified that, just as quick as he could, he ran the short distance from the truck to plaintiff, was asked:

"Q. Just at that time what did the foreman say, anything?" A. This labor foreman said "I oughtn't to have said anything to that nigger; he is a bad nigger. We had to take him off the ice gang; he is a bad nigger."

Defendant's counsel: "I object to that, as incompetent, irrelevant and immaterial. I had no notice that is what he was going to say; it is no part of the *res gestae,* not binding on the defendant, incompetent, irrelevant and immaterial."

The court elicited from the witness that the statement was made just as soon as the two men got to plaintiff and while they were picking him up, but finally sustained the objection. During the course of further argument and investigation of the circumstances bearing

on its admissibility, defendant's counsel said: "This thing, even if said at the very moment (of the blow), hasn't any hearing as to the way it happened." and that "It is no part of the transaction." The court finally sent the jury out of the court room, and, in the absence of the jury, went fully into when the statement was made, and then reversed its ruling and overruled the objection to the question. Thereupon the jury were recalled and Ford was asked: "What it was that the foreman exclaimed when he ran over to this man?" To which counsel for defendant interposed an objection "on the ground heretofore given, namely, that it is not part of the *res gestae*, and is hearsay evidence, and not within the issues tendered by the petition, incompetent, irrelevant and immaterial." The objection was overruled and defendant excepted. Thereupon the examination proceeded:

"Q. Now tell us what he said? A. Tell them what the foreman said when he ran over there?

"Q. What he exclaimed when he ran over there? A. The foreman said 'I wish I hadn't said nothing to that nigger;' he said, 'He is a bad nigger; we had to transfer him this morning from the ice gang to keep him out of trouble.'"

Defendant's counsel: "I desire to move to strike out the answer for all the reasons hertofore previously given." The motion was overruled and defendant excepted.

The objection to the admission of the hereinabove and foregoing evidence cannot be disposed of on the ground that defendant's counsel waited until after the question was answered before objecting. For whatever may *appear* to have been the situation in that regard when the question was first asked, the court *sustained* that objection, thereby recognizing that the objection did not come too late, and thereafter the objections were unquestionably timely.

It will be observed that the statement is susceptible of being divided into two parts or bearings. The

part, "I oughtn't to have said anything to that nigger,"
showed that the foreman had said something to the
negro which he regretted. In other words, the state-
ment substantiated a portion of plaintiff's evidence in
support of the first issue on which the case rested in
the pleadings, to the effect that the foreman told the
engro to "go on by, etc." and "if he don't let you by,
knock him out of the way." And although this alleged
order of the foreman may not have been a necessary
fact in the sustention of plaintiff's said first issue, never-
the less, the fact that he had said this was material and
relevant, and the statement that he oughtn't to have
said anything to the negro, or the wish that he hadn't
said anything to him, showed that he had said something
to him. Consequently, it was neither irrelevant nor im-
material.

The rest of the statement "He is a bad nigger; we
had to take him off the ice gang, etc.," could have ref-
erence only to the second issue relative to keeping a
servant of known vicious propensities, since its ten-
dency was to show that defendant was aware of such
vicious nature. Of course, if this part of the statement
was admissible under the second issue in the case as it
then stood, the fact that afterward said second issue
dropped out of the case would not make its admission
erroneous. [Winkler v. Terminal R. Assn., 227 S. W.
625, 628.]

We do not say, however, that it was admissible as
a part of the res gestae, under the first issue. While the
so-called second part of the statement is closely con-
nected with the first part, and is in the nature of a
reason why the foreman ought not to have said anything
to the negro, and may be so closely connected as to make
both parts in reailty all one statement, yet the second
part is not an exclamation growing spontaneously out
of what had just happened, but was rather the relation
of a transaction long past, namely, the taking of the
negro from the ice gang because of trouble there. If
this is its nature, then it was not admissible as a part
of the res gestae.

If, however, the first part of the statement was admissible as a part of the *res gestae,* then we need not decide whether the second part was or not, since the objection went to the statement as a *whole,* and did not separate the good from the bad. In such case, it is well settled that the trial court is not to be convicted of error in overruling the objection. [Dudley v. Wabash R. Co., 167 Mo. App. 647, 672; Bright v. Sammons, 214 S. W. 425, 427.]

It seems to us, therefore, the vital question is whether the so-called first part of the statement was admissible as a part of the *res gestae?* We think it was. The evidence is, as above shown, that the foreman told the negro to go on by and knock plaintiff out of the way if he didn't get out; that the two men, Sturgis and Ford, were only a short distance away, and they both went to plaintiff as quick as they could. Sturgis himself says he was only twelve feet away from the negro (who was close to plaintiff), and saw all that happened. The statement that "I oughtn't to have said anything to that nigger" or "I wish I hadn't said nothing to that nigger" was a spontaneous exclamation or wish growing out of the startling and untoward occurrence thus suddenly developed in their presence. [Gieske v. Redemeyer, 224 S. W. 92; Vaughan v. St. Louis, etc., R. Co., 177 Mo. App. 155, 174.] The fact that at the time the exclamation was made the blow had been struck and plaintiff, bleeding and unconscious, was being hurriedly picked up, does not render it inadmissible. While the statement must be connected and contemporaneous with the main fact, it does not have to be precisely concurrent in time. It is sufficient if the declaration is so clearly connected with the main fact to be proved that the former can be said to be the unpremeditated, spontaneous explanation of the cause. [Leahey v. Cass Avenue, etc., R. Co., 97 Mo. 165, 172; Myers v. City of Independence, 189 S. W. 816, 822, 10 R. C. L., sec. 159, p. 976; sec. 160, p. 977, sec. 161, p. 978; Anderson v. Lusk, 202 S. W. 304; Campbell v. Crutcher, 224 S. W. 115.]

It is now urged that the statement of the foreman was inadmissible because it was a conclusion. Whether it was or not, no advantage can be taken of it now, since no such ground or reason was presented to the trial court. [Johnson v. Kansas City Rys. Co., 233 S. W. 942; Phillips v. East St. Louis, etc., R. Co. 226 S. W. 863, 867.]

The evidence of the foreman telling the negro to go on by with the wheelbarrow and if plaintiff didn't get out of the way to knock him out of the way, was not improper, and it was not error to admit it. If the negro, in striking plaintiff, was within the scope of his employment as hereinabove shown, no less so was the foreman. The case is not like Wasler v. Great Northern Ry. Co., 100 N. W. 1097, where a foreman told an employee to "go after" the plaintiff and thereupon the employee assaulted and beat him up, for there the person assaulted was not interrupting nor interfering with the master's work, and hence both the foreman in making the order, and the employee in obeying it, turned aside from the master's work to accomplish their own purposes of ill will. Besides, in the case at bar, no objection was made to the evidence when given by plaintiff, nor was any motion made to strike it out until later, after the examination had proceeded for some time. The objection was then too late. [Gieske v. Redemeyer, 224 S. W. 92, 94.] When later, Ford testified to the same thing, objection was made, but it was properly overruled. [Laughlin v. Kansas City, etc., Ry. Co., 205 S. W. 3, 8.] The evidence is that the foreman's order would therefore seem to be admissible as a part of the *res gestae.* [Knoche v. Knoche, 160 Mo. App. 257, 262; May v. Chicago, etc., R. Co., 225 S. W. 660; Waller v. Hannibal, etc., R. Co., 83 Mo. 608, 612.]

Somewhere near the close of the entire case defendant orally moved the court to grant a continuance in order to obtain the deposition of Sturgis (who was in Kansas), to deny that he gave the negro any such order. Sturgis testified in the case by deposition, which, of

course, was taken before the trial, and nothing was asked or said therein about any such order. Defendant asked a continuance on the ground of surprise at the testimony of such order. The court overruled the motion. No affidavit of surprise was filed; and had error been committed thereby, no complaint as to the court's action can be relied on. [Law v. Kansas City Rys. Co., 228 S. W. 870, 872.]

Instruction H., which sought to withdraw the *whole* of what the foreman said as he and Ford were picking plaintiff up, was properly refused, since, as hereinbefore stated, the part "I oughtn't to have said anything to that nigger" or "I wish I hadn't said nothing to that nigger" was admissible. The instruction, if given, would have withdrawn this evidence from the jury. The same is true with regard to instruction I., which sought to withdraw from the jury the evidence of the foreman's order to the negro to go on by, etc., the instant before the blow was struck.

Instruction F., which was refused, told the jury that if they believed from the evidence that "Noland called the negro Thompson, a black son-of-a-bitch and that his so doing was the beginning of *the* quarrel between them," then the verdict should be for defendant. There was no error in refusing this instruction for, aside from whether the instruction stated the law correctly relative to epithets justifying an assault, and whether the instruction assumed that there was a quarrel between them, the subject-matter of the refused instruction was properly covered and submitted in defendant's given instruction L and also in plaintiff's instruction I.

Finally it is contended that the court erred in giving plaintiff's instruction I, in that, while including some of the defenses relied upon by defendant, it omitted the one that the negro acted in a spirit of revenge and to gratify his own personal feelings. But, as we have heretofore seen, if the negro was acting within the scope of his employment in striking plaintiff, then the fact that he also had an ill feeling of his own to gratify, would

not absolve the master. We do not think the instruction is confusing, nor does it leave out any of the elements of plaintiff's case or omit any defense of defendant.

It reads as follows:

"The court instructs the jury if the jury believe and find from the evidence that on or about September 6, 1919, plaintiff went upon the premises of defendant on the invitation of defendant to deliver building material, and that while so engaged on said premises and at the time in controversy plaintiff was blocking the runway in question, if so, and that the man Thompson, mentioned in evidence, was then working for and was acting as an employee and agent of defendant on said premises, if so, and was then and at all times referred to in evidence, on duty and as such employee and agent, if so, was at said time and while plaintiff was so blocking said runway, if so, attempting to use same, if so, and if you further find and believe from the evidence that at said time and place defendant by and through said Thompson as its employee and agent (if you so find such to be the facts, and that said Thompson was acting as such agent of defendant, as the term 'agent' is defined in these instructions), violently struck plaintiff with a brick and thereby injured plaintiff, if so, and if you so find from the evidence that at said time and in striking plaintiff, if he did, said Thompson was acting as the agent of defendant, if so, as the term 'agent' is defined in these instructions, and if you further find and believe from the evidence that plaintiff did not himself get into an argument and fight with said Thompson, and that plaintiff did not attempt to attack said Thompson, and said Thompson did not strike plaintiff in self defense, if so, and that Thompson was not justified in striking plaintiff at said time, if so (as explained and submitted in other instructions herein given you, then your verdict must be for plaitiff and against defendant.

The term 'agent' as used in this instruction and all the instructions herein, means an employee who is at

2—211 M. A.

the time engaged in performing his duties to his employer and engaged in furthering the interests of his employer and acting under the authority and directions of his employer or a superior foreman of his employer over him.''

So far as the alleged omission of said defense is concerned, the instruction required the jury, before a verdict for plaintiff could be returned, to find that plaintiff did not get into an argument and fight with Thompson, did not attempt to attack him, that Thompson did not strike plaintiff in self-defense and was not justified in striking him. The reference to other instructions explaining what was meant by this last was fulfilled by the giving of the above mentioned instruction L which reads as follows:

''If you believe and find from the evidence that at the time the negro Thompson threw the brick in question plaintiff Noland was threatening to strike him with an iron bar and that the brick was thrown by the negro Thompson to defend himself against such attack, then your verdict should be for the defendant.''

Under the evidence there could be no justification for the assault except self-defense. There was not even an intimation that the negro was insane. And the question whether the negro acted solely to gratify his own ill feeling was taken care of by the requirement that the jury must find that he acted in furtherance of the interests of his employer and under the directions of his foreman.

Being of the opinion that there is no warrant or justification for our disturbing the judgment, it is accordingly affirmed. The other judges concur.