HATTIE A. CLAPP *vs.* ROBERT KEMP & wife.

Suffolk.     March 9. — May 4, 1877.     ENDICOTT & SOULE, JJ., absent.

In an action for personal injuries caused by falling through a coal-hole, connected with the defendants' store, while a teamster of A. was delivering coal for the store, the defendants requested the judge to instruct the jury that "if they were satisfied that the injury was caused by the carelessness or negligence of the teamster who unloaded the coal, the plaintiff could not recover unless he was the servant of the defendants and not the servant of A. who furnished the coal." The judge refused so to rule, but, among other instructions not excepted to, gave the following : " That the defendants, if they were occupants of the store, would not be liable for the negligence or carelessness of the teamster, if, as the servant of A., he had the exclusive possession or control of the premises so far as was necessary to enable him to deliver the coal.  But if the jury are satisfied that the defendants were at the time the occupants of the store, and, as such occupants, had the right to direct or control the mode or manner of said delivery, then the teamster would be the servant of the defendants, so as to render them liable for injuries occasioned by his negligence or carelessness in the delivery of the coal." *Held*, that the defendants had no ground of exception.

TORT for personal injuries caused by the plaintiff falling into a coal-hole in front of and connected with a store in Boston, of which the defendants were the lessees and occupants under a written lease.   Trial in the Superior Court, before *Bacon,* J., who allowed a bill of exceptions in substance as follows :

There was evidence tending to show that the store and cellar and coal-bin were, at the time of the accident, and had been since the preceding October, in the sole occupation and control of R. H. Kemp.   It was proved that one Armor, a coal dealer, made an agreement in October, 1874, with R. H. Kemp, and upon his credit alone, by which Armor was to furnish him the coal for the store, for that fall and the ensuing winter, and deliver it in the cellar without any trouble to R. H. Kemp, for eight dollars per ton ; and that, pursuant to the agreement,

Armor caused coal to be hauled and delivered in the coal-bin, among other times, on December 15, 1874.

There was evidence tending to show that the coal was all hauled and delivered through the coal-hole into the bin by one and the same man, who was then in the employ of Armor, as a teamster ; that when he came with the first load, on October 21, 1874, an employee of the store showed him the way down to the coal-bin, and how and where the cover of the coal-hole was fastened; that with the exception of thus showing the teamster down to the coal-bin, nobody connected with the store had anything to do with putting in the coal, by unfastening or removing the cover of the coal-hole, or in any other way, nor in any way directed or dictated to or controlled the teamster in the delivery thereof, either as to time, manner or anything else ; that the teamster, when he put in the load of coal on December 15, 1874, opened the coal-hole himself by prying up the cover with his coal-shovel as he stood on the sidewalk by the load of coal near the coal-hole, which was a few feet from the store; and the alleged injuries happened while the teamster was delivering the load of coal into the bin, and through his negligence either in removing the coal-cover or in not properly guarding the coal-hole while he was putting in the coal.

The defendants contended that, even though the jury should find that they were the real occupants of the store at the time of the injury, and that R. H. Kemp, in all that he did, was only their agent, and hence the contract with Armor to furnish the coal was virtually a contract with them, still they were not liable for the negligence of the teamster, because in law neither he nor Armor was their servant, but that they and Armor, concerning the furnishing and delivery of the coal under the agreement, stood in the relation of contractor and contractee, and not of master and servant, and that the teamster was then the servant of Armor and not of themselves, and requested the judge to instruct the jury that, if they were satisfied that the injury was caused by the carelessness or negligence of the teamster who unloaded the coal, the plaintiff could not recover unless he was the servant of the defendants and not the servant of Armor who furnished the coal.

But the judge refused to instruct the jury in the terms of the request, but gave the following instructions, among others, to which no exception was taken, namely, " That the defendants, if they were occupants of the store, would not be liable for the negligence or carelessness of the teamster, if, as the servant of Armor, he had the exclusive possession or control of the premises so far as was necessary to enable him to deliver the coal. But if the jury are satisfied that the defendants were at the time the occupants of the store, and, as such occupants, had the right to direct or control the mode or manner of said delivery, then the teamster would be the servant of the defendants, so as to render them liable for injuries occasioned by his negligence or carelessness in the delivery of the coal."

The jury returned a verdict for the plaintiff; and the defendants alleged exceptions.

*L. W. Howes,* (*J. M. Way* with him,) for the defendants.

*C. A. Drew,* for the plaintiff.

LORD, J. Undoubtedly both the request for instruction, and the instruction actually given, are liable to verbal criticism. But in substance and effect we do not see any difference between them. Each properly based the liability of the defendants upon the decision of the question, whether the teamster, by whose negligence the injury was received, was at the time in the performance of the business of Armor, as his servant, or in the performance of the business of the defendants, as their servant. We are not to assume that, by the peculiar phraseology, the presiding judge intended to leave the question of right to direct or control the manner of said delivery as a question of law to the jury; but simply that, if the jury found such a state of facts as in law gave to the defendants the direction and control of the manner of the delivery of the coal, he would be the servant of the defendants; and that proper instructions were given to the jury as to what state of facts would thus place the delivery under their control. He had already instructed them that mere occupancy of the store was not of itself sufficient to make the teamster their servant, and that, if in fact the teamster, as the servant of Armor, had exclusive possession or control of the premises so far as was necessary to enable him to perform the service in which he was engaged, the defendants would not be

liable.   It would be a too strict and rigid construction to give
any other meaning to the language of the presiding judge than
that which we have adopted; and, with that construction of the
language, the instruction given was quite as favorable to the
defendants as that asked for by them, and quite as favorable as
the law would warrant.                    *Exceptions overruled.*