ANNIE HEALY et al., Respondents, v. WROUGHT IRON RANGE COMPANY, Appellant.

Kansas City Court of Appeals, January 22, 1912.

1. MASTER AND SERVANT: Assault and Battery: Officer Executing Writ. A writ in an action of replevin was placed in the hands of the constable commanding him to take a cooking stove claimed by the plaintiff and deliver it to him. The officer requested that plaintiff send his wagon and two servants along with him to secure the property, which the plaintiff did. The defendant was not at home and his wife refused to let the officer in the house to execute his writ. The officer broke down the door, entered the kitchen, and set the two servants at work to disconnect the stove from the water pipes, under his super-

intendence. The wife came in and stated she was going out to call her husband, whereupon, one of the servants got up from his work at the stove and assaulted her. Then work on the stove was resumed and it was carried out of the house by the servants and put into the wagon and the servants took it to the plaintiff in the replevin. The wife, joining her husband, sued the plaintiff for the assault, alleging the servants were his; and it was *held* the servants in that particular work were those of the officer and not of the plaintiff, and therefore he was not liable.

2. ———: ———: **Loan of Servants: Liability for Unlawful Conduct.** If a master lends a servant in his general employment to a third person to perform a particular service, which it was the duty of that person to perform, the servant being under his superintendence and control, such person and not the master, is liable for the unlawful conduct of such servant.

3. ———: ———: **Plaintiff in Replevin: Assumption: Unlawful Conduct of Officer.** The plaintiff in an action, who causes a valid writ to be placed in the hands of an officer, does not assume liability for the officer's unlawful conduct in executing the writ, nor for the conduct of the latter's servants.

Appeal from Jackson Circuit Court.—*Hon. Jos. A. Guthrie,* Judge.

REVERSED.

*John F. Cell* for appellant.

(1) The court erred in overruling the demurrer to the evidence offered by the appellant at the close of plaintiffs' evidence, and at the close of all the evidence, for the reason that the servants, agents and employees of appellant at the time the alleged wrongs were committed were not acting within the scope of their authority, or in the furtherance of their master's business. (a) The constable was not the agent and servant of the appellant for any purpose. Mechem on Agency, sec. 839; Mechem on Public Officers, sec. 904; Howell, Jewett & Co. v. Caryl & Co., 50 Mo. App. 450; Sutherland v. Ingalls, 63 Neb. 620. (b) The relation between the constable and appellant in this case was analogous to that of independent contractor

and owner.  Burns v. McDonald, 57 Mo. App. 599; 2
Thompson on Neg., 899; Crenshaw v. Ullman, 113 Mo.
639; Gayle v. Car & Foundry Co., 177 Mo. 427; Lar-
son v. Railroad, 110 Mo. 241; Scharff v. Const. Co., 115
Mo. App. 167.   (2)  But if the question of agency
was to be a question for the jury, then the court erred
in giving plaintiffs' instruction No. 1.   (a)  The in-
struction is so framed that it devolved upon the jury
to find both the facts as to what did constitute the
relationship of master and servant, as well as whether
or not those facts, if found, were true.   Where an
instruction is asked upon an issue, the former is al-
ways the province of the court; the latter only be-
longs to the jury.   McQuillin on Instructions, sec. 35;
Lesser v. Railroad, 85 Mo. App. 335; Boot & Shoe Co.
v. Bain, 46 Mo. App. 590; Bank v. Heuschen et al.,
52 Mo. 209.   (b)  When this instruction told the jury
in unmistakable terms that the appellant Range Com-
pany was responsible, if any of its servants did the
act, the instruction was clearly misleading. Voegeli v.
Marble & Granite Co., 49 App. 652.

*Ewing C. Bland* and *James P. Aylward* for re-
spondents.

(1)  The acts of the negro employes in assaulting
plaintiff, Annie Healy, were done within the line of
their authority as the agents of the defendant Range
Company.  Gomphers v. Telephone Co., 127 Mo. App.
557; Knowles v. Bullene, 71 Mo. App. 341; Dwyer
v. St. Louis Transit Co., 108 Mo. App. 152; Haehl v.
Railroad, 119 Mo. 340; Bouillon v. Gas Co., 148 Mo.
App. 473; Levy v. Ely, 62 N. Y. Supp. 855; Meade v.
Railway, 68 Mo. App. 92; Levi v. Brooks, 121 Mass.
501; Garretson v. Dunckel, 50 Mo. 104; Eckert v. St.
Louis Transfer Co., 2 Mo. App. 45; Traurerman v.
Lippencott, 39 Mo. 478; Peddie v. Gally, 95 N. Y. Supp.
652; Shenkel v. Palmer, 50 Mo. App. 571.   (2)  The

negro employes of the defendant were under the explicit directions of the Range Company to "get the stove" and were not under the exclusive control and direction of the deputy constable. Garvin v. Railway, 100 Mo. App. 620; Hamble v. Railway, 164 Fed. 414; Clark v. Geer, 86 Fed. 447; 5 Shearman and Redfield on Neg., p. 244, sec. 162. (3) There was no error in instruction numbered 1 given on behalf of the plaintiffs. Carthage etc. v. Bauman, 55 Mo. App. 212; Feary v. O'Neill, 149 Mo. 473; Harper v. Fidler, 105 Mo. App. 680; Goldsmith v. Wamganz, 86 Mo. App. 8; Muehlhausen v. Railway, 91 Mo. 332; Brewing Co. v. Linck, 51 Mo. App. 482; Christian v. Ins. Co., 143 Mo. 467.

ELLISON, J.—Plaintiff brought this action, joining her husband as a party plaintiff. The action is based on a charge of malicious assault and battery, accompanied by abusive and profane words. She recovered judgment in the trial court for $1,000 actual and $7,000 punitive damages. The trial court suggested a remittitur of $5,000 of the punitive damages, which the plaintiff consented should be entered, and judgment was then rendered for $3,000, and defendant appealed.

There was evidence in plaintiffs' behalf that two negroes in defendant's employ, or at least one of them, assaulted plaintiff and cursed and abused her. The facts leading up to the assault are substantially as follows: Defendant brought an action of replevin against plaintiff's husband before a justice of the peace for a cooking stove. The justice issued a writ to the constable, commanding him to summons the husband to appear for trial and to take and deliver the stove to defendant. The constable went to plaintiff's house, but the husband was absent. He notified plaintiff of his writ and suggested that she could see defendant and that she could put up a delivery bond. She said she

would not, but would kill the first man who attempted to take the stove. The constable then left, and having in mind that parties defendant in such cases frequently stopped proceeding by adjusting matters, went to defendant on the next day and asked if these parties had been in to see them. He was informed they had not. He was a witness for plaintiff and was asked "how these men (the negroes) from the Wrought Iron Company happened to go with you to take the range," and he answered that "they were sent down there by the company." He was then asked, "Now how did you happen to get them down there?" and answered, "I left word for them to meet me down there; for them (defendant) to send for the stove." There is no doubt that in compliance with this request defendant did send the two negroes in its employ with a wagon to get the stove. As expressed by one of the negroes, defendant's manager "told me to go with the constable and get the stove." The constable and the negroes went to the house. Plaintiff was on the porch, and as soon as she saw the constable, she went in and locked the door. He demanded admittance, but could not get in. He then sent one of the negroes for a policeman, who came and also demanded that the constable be let in, but to no purpose. The constable then went to the back, or kitchen door, and broke in. He then put the negroes to work detaching the stove from the gas and water pipes, preparatory to carrying it out to defendant's wagon. Plaintiff came into the kitchen exclaiming that she was going to call her husband. Then it was (according to the evidence for plaintiff, which we shall assume to be true) that one of the negroes left his work detaching the stove and assaulted and beat her. After the assault the negroes carried the stove out to the wagon and took it to defendant. The testimony of different witnesses did not put the constable in the same place while the assault and battery was being committed; some of plain-

tiff's principal witnesses said he stood right by, while others stated he was outside the door. At any rate he told the negroes. what to do and "superintended the work" on the stove "as they were taking it down."

Liability in this case depends upon whose servants the negroes were, in the particular wark in hand when the assault was committed. In our opinion they were the servants of the constable. It was his duty, in obedience to the command of the writ of replevin, to take the stove "from the possession of the defendant and deliver the same to the plaintiff." [Sec. 7763, R. S. 1909.] Defendant was under no obligation to take the possession from plaintiff's husband; indeed it would have been unlawful for it to have done so. Nor was there any duty or obligation to assist the constable. It was the constable's sole business to take the property from the premises and deliver it over to defendant. There fore, the acts of the negroes in taking the possession of the stove from plaintiff's husband were the acts of the constable and not defendant. The acts were not done in the prosecution of the defendant's business, for the plain reason that it was not its business to take the property. The fact that the negroes were under the general employment of the defendant, does not make it liable for a wrong committed by them in the particular service and control of a third party. The defendant had no right of control, nor did it pretend to exercise any control of the negroes, in the work of securing possession from plaintiff's husband. If the negroes displeased the constable by their conduct, he had the right to end their service to him and to order them back to the wagon to wait his delivery of the stove to them.

Defendant had not even loaned its servants to the constable, for it is made manifest by the evidence that the only purpose in sending the wagon to plaintiff's premises was to receive the stove which the constable was commanded to deliver to it. But if it be

conceded that defendant loaned its servants to him, there is still no liability, for it must be admitted that defendant parted with all superintendence and control of them while engaged in the particular employment of performing the constable's work of taking the stove. In Rourke v. Colliery Co., 2 Common Pleas Div. (L. R.) 205, there is this short and comprehensive statement: "When one person lends his servant to another for a particular employment, the servant, for any thing done in that particular employment, must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him." That is quoted in Donovan v. Laing W & D Construction Co., 1 Q. B. Div. (1893) 629, 632, the court saying that, "nothing can be clearer than that;" and that though one is the servant of another, but is lent to a third person and was negligent in the operation in which such third person employed him, he would be held, so far as that operation was concerned, to be in the employment of the third person "who had control of the matter on which he was engaged, over which his general master had no control." Applying to this controversy the words of Lindley L. J., in that case, we say that "the key to the whole case is that" the constable was taking the stove and not the defendants, and the constable "must for that particular job be considered as" the negroes' master. The rule in those cases has been approved in this court (Garven v. Railway Co., 100 Mo. App. 617), and in many other jurisdictions. [Wyllie v. Palmer, 137 N. Y. 248; Higgins v. Western Union Tel. Co., 156 N. Y. 75; Olive v. Whitney Marble Co., 103 N. Y. 292, 300; Byrne v. Railway Co., 61 Fed. 605; Powell v. Virginia Construction Co., 88 Tenn. 692; Clapp v. Kemp, 122 Mass. 481; Indiana Union Traction Co. v. Benadum, 42 Ind. App. 121.] In the latter case the rule is stated to be "well settled that where the employees of one person are engaged in the performance of acts for

another, *which acts the latter is under a duty to perform,* the relation of servant is sustained to such a one whose duty it is to perform such work, if he has control of the execution thereof.''

What we have written leaves wholly inapplicable the contention that the master is liable for the acts of his servants in the line of that employment, even though not ordered or expected to be committed. We are also cited to many authorities which we likewise think are not applicable to the facts in this controversy. This is not a case where the process is invalid, or the property of third persons was taken. The replevin in which defendant here was the plaintiff was founded on a valid writ, and it was placed in the hands of the proper officer for service in a lawful manner. A fair consideration of the evidence shows that was really all the defendant did in this case. Much stress and frequent iteration is made of an expression by a witness that defendant's manager said they would send the negroes *"to get"* the stove. Certainly that was what they were sent for, but not to set the constable and his writ aside and, themselves, take the stove from the plaintiff. They were ''to get the stove'' which the officer was to take from plaintiff's possession and deliver to them. If on that mission the officer made assistants of them in the performance of his work and duty, they were his servants.

The defendant in causing the valid writ to be put in the officer's hands did not assume liability for the officer's unlawful conduct, or that of his servants, in executing the writ. [Mechem on Public Officers, Sec. 904.] In Sutherland v. Ingalls, 63 Mich. 620, it is stated, that a landlord placed a writ of possession in the hands of a sheriff, who meeting with opposition from the wife of the tenant, handcuffed her, and kept her in that condition while he executed the writ, and it was held the landlord was not liable to her suit in trespass. It was said that:

"No one can be held liable as a trespasser for employing an officer to execute lawful process. It is the right of anyone to have his regular and valid writ served and enforced, and the officers of the law are bound to perform that duty, and cannot be blamed for doing it in a legal manner. Everyone has a right to suppose that the ministers of the law will not abuse their functions, and no one who lawfully employs them is liable if they do. It is only where the party himself orders or encourages lawlessness that he can be treated as a joint wrong-doer, and then he is liable because actually a trespasser, and to the extent of his own misconduct."

We are indebted to respective counsel for a thorough investigation and presentation of the case. The judgment will be reversed. All concur.