GERTRUDE BILLINGSLEY, Respondent, v. KLINE CLOAK COMPANY, Appellant.

Kansas City Court of Appeals, June 11, 1917.

1. **FALSE IMPRISONMENT: Bogus Checks: Evidence.** A woman of mature years, with a knowledge of the world, met a strange man on a street corner in a city and permitted him to court her within twenty minutes. She shortly married him without inquiry as to where he lived or stayed. He was a drunken vagabond, without money and issued bogus checks which were cashed on her vouching for them. On the second day after the marriage she went with him to a retail store where she made large purchases of clothing, he paying for them in different bogus checks. She put on the clothing but before getting out of the store it was discovered the checks were fraudulent. The storekeeper had them both arrested and imprisoned for a day when she was discharged but he sent to the penitentiary. She brought suit for false imprisonment. It was *held* she did not make a case and a judgment in her behalf was reversed.

2. ————: **Probable Cause: Allegation: Proof: Reasonabe Ground.** If a plaintiff unnecessarily allege that a false imprisonment was without probable cause he must prove it; and if it appears at the trial that a reasonable and cautious man, in the circumstances, would have believed him guilty, the plaintiff fails.

3. **HUSBAND AND WIFE: Crime: Presumption: Rebuttal of Presumption.** Though a wife is presumed to be so under the influence of her husband that she cannot commit a crime in his presence; yet

this is a rebuttable presumption, and if the evidence shows that she took the lead and suggested and advised the criminal acts, the presumption is rebutted.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porterfield,* Judge.

REVERSED.

*Russell Field, R. E. Kalbert* and *J. C. Rosenberger* for appellant.

*T. A. Milton, J. K. Cubbison* and *W. G. Holt* for respondent.

ELLISON, P. J.—Defendants are merchants in Kansas City dealing extensively in women's clothing, including hats and shoes, as well as articles of female adornment usually kept in large retail establishments. Plaintiff and her newly married husband, one "Doctor" Ekstrom, went into the store on the 23rd of December, 1914, when she purchased goods for herself amounting to the sum of $178, which she put on in one of defendant's dressing rooms. Her husband paid for these in checks which were ascertained to be fraudulent and "bogus" before they left the building and they were both arrested, taken to the police station and there lodged for the night and a part of the next day. She thereafter brought the present action for false arrest and imprisonment and obtained judgment for $2500. She alleged in her petition and tried her case on the theory that defendant had no probable cause. She so submitted it by instructions given in her behalf and insists here that she has successfully assumed that burden; and we will consider the case from that standpoint.

Ekstrom was a vagabond whom plaintiff says represented himself to be a wealthy dentist from Omaha. Plaintiff was thirty-four years old. She had been a clerk in a department store and later a professional nurse, at which business she was engaged when the present trouble had its inception. The record of her

testimony shows that she is a woman of abundant mental capacity, though her many indiscreet actions show her to lack that reserve becoming to a woman of proper moral sensibility. Her examination, both by deposition and in court, shows that she knew the ways of the world and that she was well able to take care of herself up to the standard by which she chose to be measured. She had been married only once prior to meeting with Ekstrom though, for some reason, she told her first husband that he was her second. They were divorced. During the time she had been living in Kansas city, she visited grill rooms ad cabarets where she frequently drank liquor. She stated that she never drank alone, but frequently did with a companion for sociability.

She first met Ekstrom on a street corner in Kansas City, after night, in the forepart of December, 1914. He approached her with his card, said he was a physician and that he saw by her dress that she was a nurse. They boarded a street car and in twenty minutes he had made love to her. However she gave him her card and they separated by his leaving the car and she proceeded on to where she was engaged in service. During a period of perhaps two weeks, he called her on the phone and finally, at his request, she met him at eight o'clock at night at the Union Station in Kansas City and they drove in company with a friend of hers, to a hotel where the friend was left and they went to the grill room. On the way to the hotel he had flourished a bottle of whiskey but did not drink. At the grill room he drank, but plaintiff could not remember whether she did or not. On this occasion he proposed marriage. She said that it was a business proposition and not supposed to be a love match. The next day, the 19th of December they became engaged and the second day thereafter were married; and he gave a bogus check of $25 to the preacher for his fee, the latter paid $2.75 protest charges. He told her he was a dentist with a large practice and resided in Omaha. During this short acquaintance and courtship she made no in-

quiry about him. She did not even inquire where he was staying in Kansas City, saying that it was nothing to her; and after they were married she didn't ask and said she didn't care where he stayed.

Two strange men dined with them at a hotel the night of the marriage and immediately after, he went out with them for a carouse, leaving her behind. He came back in the night "real drunk." She said she did not chide him; that she was not annoyed and when asked if it "bothered her any," answered. "Why no." He had no baggage and just before he retired some of the hotel people came to the door and demanded pay for the room. He went out and had the gentleman called to vouch for him whose wife plaintiff was waiting on. It seems that on next day plaintiff went out to see this lady and that Ekstrom called for her in a cab, but had no money to pay the driver and got it from plaintiff. They drove away and Ekstrom asked her to cash a ten dollar check for him. She agreed to do it but told him that was the last, that she was "tired of it." It was bogus but with the money they went to a Cafe for supper, where they had a drink or, as she called it, "an appetizer." Then (the second night of the marriage) he again went out and when he returned she was asleep and did not know whether he was drunk or not.

The next day was the day of shopping at defendant's store and the arrest. He had nothing with which to pay for their breakfast and she, notwithstanding her vow the day before that she would not, was forced to finance him again. Before going to the store they stopped at a "beauty parlor" where plaintiff had her hair dressed etc., the bill being $8.50 was paid for by Ekstrom by a bogus check for $10 accepted because of the plaintiff's introduction. This was after Ekstrom had told her that he had been to the bank and arranged for money.

They then went to defendant's store and she testified that all of this time she had seen that he had no money except what she gave him. She introduced him and when

asked if she did not represent to defendant that he was wealthy and his checks alright said she did not remember, but she would not deny that she did. She bought a hat for $23, a fur coat for $125, and a muff for $25, a pair of shoes for $7 and a pair of gloves for $2. She put these articles on in the store; and in addition bought a dress, underwear, etc. She knew Ekstrom was paying for these goods with checks and she said to him: "You will have to get it fixed. up with somebody. You know I am not going to O. K. any more of your checks for you." In payment for the hat, coat and muff, he gave his check on the Kansas City bank for $173, but defendants soon found that he had no funds there. As plaintiff continued her purchases and while having the dress fitted he remonstrated, but she told him she would do as she pleased and suggested to him that he get another check cashed so that he would have some ready money. He gave his check for the dress and another check for fifty dollars for the shoes, receiving back from defendants $43 in change.

When defendants saw that every thing was being paid for by check, inquiry was made of the Kansas City bank and word received that he had no funds. When confronted with this he said he forgot to say that his money was in the Omaha banks and that he intended the checks to be drawn on a bank in that city. Inquiry there by telephone resulted in the same answer of no funds. When report was made to defendants that the checks were bogus, an officer was spoken to and after full investigation had disclosed that the goods had been feloniously obtained, the officer took both plaintiff and Ekstrom to the station where she was confined in the "hold-over" during that night and the next day, when she delivered up the clothes she had obtained and was discharged; but he was prosecuted and sent to the penitentiary.

Though defendants deny ordering the arrest, or taking any part in her incarceration, we will save space by conceding that there was evidence sufficient for the jury to connect them with it. And we may also concede,

without detail, that if plaintiff were innocent and without fault, there was sufficient indignity and humiliation to justify the amount of the verdict.

Plaintiff has invoked that rule of law that a wife is presumed to be under the influence and coercion of her husband to such degree that she is incapable of committing a crime in his presence and cites us to State v. Miller, 162 Mo. 253. The affirmative testimony of plaintiff herself abundantly rebuts all presumption in the direction of exculpation. She admitted that Ekstrom remonstrated against the extent of her purchases and that she suggested and encouraged the drawing of some of the checks. Asked if Ekstrom had not objected to her buying a dress and she told him "to go and mind his own business," that "she was doing that," that she "would buy what she pleased," she answered, she did not remember, but that she would not deny it. The presumption in favor of the wife is not conclusive and is rebuttable. State v. MaFoo, 110 Mo. 7; State v. Miller, supra.

We have already called attention to the fact that plaintiff alleged the arrest and imprisonment were without probable cause and that she tried her case on that theory and she concedes that she must abide by that theory in this court. In order then to sustain the judgment she must have shown not only her innocense, but that defendant was without probable cause to believe her guilty. [Russell v. Shuster, 8 W. & S. 308, 310; Fuqua v. Gambill, 140 Ala. 464, 468; Rich v. McInerny, 103 Ala. 345, 354; Pritchett v. Sullivan, U. S. C. C. A., 182 Fed. 480, 484; Murphy v. McAdory, 183 Ala. 209.] In 19 Cyc, 339, under the subject "False Imprisonment," it is stated: "It has been held that if plaintiff alleges malice and want of probable cause, although unnecessarily, he must prove those elements."

Probable cause "which will relieve a prosecutor from liability, is a belief by him in the guilt of the accused, based upon circumstances sufficiently strong to induce such belief in the mind of a reasonable and cautious man." [Vansickle v. Brown, 68 Mo. 627, 635; Stubbs v. Mulholland, 168 Mo. 47, 74.] "Probable cause

does not depend on the actual state of the case, in point of fact, but upon the honest and reasonable belief of the party commencing the prosecution.'' [James v. Phelps, 11 Ad. & El. 483, 489.] If we applied this definition to the facts of the case we would be relieved from the necessity of saying that plaintiff was a party to obtaining the goods on bogus checks, by acquiescence, if not by participation. For it seems too plain for dispute that not only were the circumstances sufficiently strong to induce belief of her complicity, in the mind of a reasonable man, but it would have required a most dense and abnormal mind, not to have believed it.

But we need not put our judgment on that ground for, that she was aware, or had every reason to believe, that her new acquaintance and new husband, was getting the goods by use of false checks is established by her own testimony. While not so stating it, in words, the trend of the argument in her behalf would lead one to believe that she was an innocent, giddy and foolish young girl, whereas, to recapitulate, she was a smart woman thirty-four years old, who had been married and divorced. She picked up this swindler on a street corner after night, exchanged cards with him and allowed him to make love to her in the first few minutes of their acquaintance. She shortly married him without inquiry as to who he was. She saw he was low and drunken, without a cent of money and with no more lugage than a night shirt. He immediately begun the cashing of checks on her vouching, until she refused further aid in that line. With this and much more, she went with him to obtain a valuable outfit of apparel at defendant's expense, which she immediately put on her person instead of having it delivered later at the hotel. She encouraged him in making checks to defendant, not only in payment of goods, but in getting money. Finally, when put under arrest before getting away from the store, she made no of restitution. To say she did not believe that her band was uttering bogus checks would be to deny capacity to appear in court, or employ counsel in fense.

What, in reason, were defendants to do? The situation was as she, herself, had laid it out. Defendants were the innocent victims. She was carrying away their goods and they holding fraudulent checks. Should they be required to stand by without effort to save themselves? If, in such circumstances, one's call upon the law is to penalize him, it would quickly lead to dire results in other directions.

We think the judgment is without legal support and hence reverse it. All concur.