BERT S. MASON, RESPONDENT, v. DOWN TOWN GARAGE COMPANY ET AL., APPELLANTS.—53 S. W. (2d) 409.

Kansas City Court of Appeals. July 5, 1932.

*Woodruff & Gard* for respondent.

*W. R. Moore* and *Clyde Taylor* for appellants.

BOYER, J.—By a petition framed in two counts plaintiff sought actual and punitive damages for an assault and for false arrest and imprisonment. Plaintiff had a verdict and judgment against both defendants on the assault charge for actual damages in the sum of $4000, and judgment against both defendants on the second count for actual damages in the sum of $1000. Punitive damages were not allowed on either count. After the usual steps by motions for new trial and in arrest both defendants duly appealed. The questions raised include the ruling of the court upon demurrers to the evidence and call for a search of the whole record for the facts. The abstract discloses the following:

On the 26th day of October, 1929, plaintiff was conducting a garage located at 814 East Eleventh Street in Kansas City, Missouri. The Down Town Garage Company, a corporation, was engaged in a similar business at another location in the same city. Defendant Smith was its employee and was engaged in night work and operated a tow car for defendant company. The Police Department of Kansas City had an understanding with the defendant company, the nature of which may be stated in the words of defendants' counsel: "It was part of the arrangement that had been made by the Police Department and the Down Town Garage Company that whenever a wrecked car needed towing, under such circumstances, that the police for any reason were interested in having it towed, such as a wrecked car, an abandoned car, or a car engaged in violation of the law, something of that sort, that the Police Department would call the Down Town Garage and have them tow the car, go there and get it, the Police Department not having tow cars of its own."

On the date named and at about the hour of eleven o'clock, P. M., there was a collision between a Buick car and a Dodge car in front of, or very near, the Mason garage, at which time the Buick car lost the rim and casing from one of its wheels which fell and remained for a time in the middle of the street. The operator of the Buick car drove past the scene of the wreck about the distance of one-third of a block where he abandoned the Buick car in the yard of a filling station and disappeared. The Dodge car belonged to a customer of Mr. Mason. The owner of it was there, and Mason, with two of his employees named Johnson and Posey, moved the car from the street into the Mason garage, and Mr. Mason picked up the tire of the Buick car and carried it inside the entrance of his garage and placed it against an automobile standing near the door.

Two police officers of Kansas City, named Hink and McDonough were attached to the automobile theft bureau of the Police Department, and at the time in question were driving around in an automobile in the neighborhood of the collision. They were not in uniform and were designated as detectives. Their attention was called to the abandoned Buick car, and in about twenty minutes after the collision officer Hink went to the Mason garage in order to use the telephone. Mason and his two employees named were present. According to plaintiff's evidence officer Hink did not tell any of the men, nor did they know, that he was an officer, or the purpose of his business, and the officer stated that he was not sure that Mr. Mason was in the office at the time he telephoned. Officer Hink called Police Headquarters and asked to be connected with the Down Town Garage. The connection was made and he left an order or a request for the company to send its tow car to the location of the Buick automobile.

Plaintiff's employee, Johnson, testified that he heard a part of the conversation of the officer in reference to a garage or tow car. Very shortly thereafter defendant Smith appeared with a tow truck at the place where he had been directed to go and there met the two officers at the location of the Buick car. At the time officer Hink was in the Mason garage office to telephone he testified that he informed Johnson "when the Down Town Garage, when the truck comes after the Buick, I will send him down here after this tire." The absence of the tire from the Buick and the presence of it in the Mason garage was known to the officers. When Smith arrived the officers directed him to go to the Mason garage and get the tire. He was informed the garage man would let him have it. Smith then drove the tow car a short distance to the Mason garage, walked in the east entrance, met Johnson and asked for the tire. Johnson pointed it out and told him, "there it was." Smith picked up the tire, carried it out and placed it on the truck. At that time Mason was in the office and

from his evidence did not know what had happened between Smith and Johnson and he followed Smith out of the garage. In describing what then occurred, Mr. Mason testified:

"I noticed some one come and pick up the tire and I went out and it had been thrown in this car and I put my hand on the tire and asked if he had authority to take the tire, and I was struck a blow, and the next thing I knew I heard a man, I later learned to be Elgin Smith, telling an officer we were trying to steal the tire, and the officer took hold of me and ordered me in the police car. . . ." On cross-examination he testified that all he said to Smith was: "Who are you?" That Smith turned and struck him without saying a word, and the next thing he knew the officers were putting him in the car.

As to what occurred at the time of the assault, Johnson testified: "Mr. Mason came out of the office and I went out behind him and started up to where the Buick was and I got fifteen or twenty feet and heard a blow and turned around and saw Mr. Mason falling." He said the man with the truck had struck Mason and later struck him two or three times while he was endeavoring to rise.

Smith testified that when he went after the tire he saw Mason and Johnson and "I told them I was from the Police Department and that the two officers had sent me down there after the tire and asked them if there was a tire there belonging to that Buick." They said: "Yes, sir." Johnson said: "There it is." Smith said that he was informed he could have the tire, and further: "I went out and got the tire and took it out to the truck and put it up on the truck and I came back. There was a bumper laying there by the tire and I asked him, 'does this bumper go too,' he said 'no.' I went back and got in the truck. . . . I got up in the driver's seat and started the truck up; started to back up to the Buick." He then testified that Mr. Mason came out and said: "Who does that Buick belong to." Smith informed him that he did not know. He testified that Mason then said: "'Well, by God, I will take that tire then,' and he reached up and pulled the tire off the truck, and I kicked the motor off and got out and I said, 'Mister, you can't take that tire, the police officers sent me down after that, I will be held responsible.'" He further testified that the tire was then on the sidewalk; that he reached down to get the tire and that Mason struck at him; that he then struck Mason; that Mason was striking at him all of the time. Smith was asked why he hit Mason and said: "Why, in self-defense. I didn't want the man to beat me up there and protecting the company's property that I was working for." Smith further said that three or four men came out of the garage and it looked like they had axles or something. "I didn't expect to let them beat me up

with them irons and I went out to the middle of the street and hollered for these officers.''

While these things were taking place, officers Hink and McDonough were driving around looking for the man, or the parties, who had been in the Buick, and they appeared at the scene of the commotion about the time Smith called for them. In the meantime two motorcycle officers were going by and stopped to inquire the trouble, but they departed when they ascertained that the other officers were on the case. When the officers arrived, officer Hink testified that Smith said: ''The garage man won't let me have the tire.'' He further testified that he engaged in conversation with Mason about the tire which was then on the curbing by the side of the truck. Officer McDonough testified that the tire was on the truck. There was some communication between Hink and Mason designated as an ''argument'' and while this was going on or before that time, Mason's employee Posey had been informed that Mason was in a fight. He picked up a piece of an automobile spring and went out of the office to the scene of the trouble. Officer McDonough testified that Posey was approaching officer Hink from the rear and was making an attempt to strike him with the piece of iron. McDonough grabbed Posey, informed him that he was under arrest, and attempted to put him in the police car. Mason made some interference and he was also placed under arrest. Both men were taken to the police station and after preliminaries were placed in confinement for a period of about two hours when they were released. The officers made their report to headquarters that the men were arrested on view for interfering with an officer; that they had been drinking, and that Posey had attempted to assault officer Hink. A report of the casualty to Mason was also made by one of the officers in which it was stated that Mason was drunk and would not give Smith the tire; that Smith reported that Mason was drunk and cursed him and that Smith struck Mason. There was no formal charge filed against the men and they were dismissed without prosecution.

The evidence that might indicate any request by Smith for the arrest is shown by the testimony of Posey in the following questions and answers:

''Q. Did you hear Elgin Smith say anything as you were going out there? A. Well, just as I got out there I heard him call Tuffy two or three times and say, 'come over here, they are trying to steal this tire.'

''Q. What else did you hear him say? A. I believe he said 'take them both down and lock them up—take them both down' that was what he said.''

Tuffy was a name by which one of the officers was known.

Posey and Mason both admitted that they had a drink of wine, but denied they were under the influence of liquor. The officers said they were. Posey was asked whether or not he took the iron out to hit somebody. His answer was: "No one in particular."

Both the officers testified that Smith said nothing about arresting the men; that they were not arrested because of anything that Smith said; that they were arrested because Posey had the spring leaf preparing to strike the officer and because of Mason's interference; that they were both charged with interfering with officers, and that both had been drinking. Officer McDonough testified that he jerked the iron out of Posey's hand and said: "You are under arrest;" that officer Hink took charge of him and that Mason said: "What are you doing that for?" I said: "You are under arrest too." He also said that when he and his partner arrived they announced they were police officers and showed their badges. Officer Hink testified that while he was talking to Mason, McDonough grabbed somebody behind him and said: "Look here, this guy has got a spring leaf under his coat;" that he then took charge of Posey and had trouble getting him in the car and that Mason interfered and would not let him put Posey in the car, and that they then put Mason in also.

Plaintiff offered evidence as to the nature and extent of his injury received in the assault and also evidence of his good reputation as a peaceful and law-abiding citizen. One of the officers testified that when the two men were discharged they apologized and said they were probably wrong. The only evidence in rebuttal was a denial by Posey and Mason of this apology. Further reference to the pleadings, facts, and instructions will be made as may appear appropriate in a consideration of the points raised.

## OPINION.

The separate demurrers of defendants to the evidence on the assault charge were properly overruled. There is no contention that it was not competent for the jury to determine that Smith made the assault without provocation. The contention is that the Down Town Garage Company was not liable for the acts of Smith because such acts were not within the scope of his employment, and because Smith at the time was acting for and under the instructions of the police officers. The Missouri authorities relied upon by the company are Healy v. Wrought Iron Range Co., 161 Mo. App. 483; Melcher v. Handleman, 249 S. W. 152; Garven v. Railway Co., 100 Mo. App. 617. It is insisted that the Healy case is a ruling authority upon the facts in the case at bar and that the two cases cannot be distinguished. To this we do not agree. In the case referred to an officer was seeking to take possession and to make delivery of a stove under writ of replevin. He requested the defendant to send his wagon

and servants to get the stove. Defendant sent them. The officer was endeavoring to gain admittance to the house in order to get the stove and requested the servants of defendant to aid him. The house was finally broken into and under the direction of the officer the servants were endeavoring to detach the stove from its fastenings. During the process one of them made an assault for which suit was instituted against the employer. It was held that there was no liability because it was the officer's sole business to take and deliver the stove; that the acts of the servant were the acts of the officer and not defendant; that the servants were at the time acting under the orders of the officer who was in control, and that defendant had no right of control, nor did defendant pretend to exercise any control over the operation of taking possession of the property. In the case at bar the assault occurred after the defendants had obtained possession of the property in question. Smith obtained the tire, over which the controversy arose, peaceably and without objection and had it on the truck ready for transportation. Legally it was then in transit and Smith was on the way. His possession was the possession of his employer. The officers were not then present controlling or directing him, but from that time on he pursued a course dictated by him own judgment. The duty to protect the thing in his possession was involved and he had the implied authority to perform that duty and to keep the property and transport it safely to the place of business of his employer. His judgment as to how that duty should be performed was substituted for the judgment of the master. Under the circumstances he was invested with authority to make the decision for defendant company as to what should be done at the time, and everything he did was incident to and connected with the business of his principal. If it could be said properly that he was under the exclusive direction and control of the police officers in receiving the property, such was not the case after it had been received and placed in his possession. It appears that he was not under the exclusive control of the officers, and his employer never relinquished the right or authority to control him. Where the question of control is involved the *right* of control is of dominant importance. If the assault had occurred before Smith got possession of the tire and while he was aiding the officers, under their direction, to obtain possession, the question of the liability of the employer might be cast in the penumbra. The accomplished fact of possession sufficiently distinguishes this case from the Healy case. After possession had been obtained it was the possession of the garage company, through its agent, for the purpose of transportation, care and custody and the company would have been liable for loss occasioned by its neglect. In this situation the beginning of the trouble arose. It is not material that it was near the place of business of plaintiff, and the situation was no different to what it would have

been if plaintiff had stopped Smith at some other point on his way to the garage and attempted to reclaim the tire. Whether Smith was about the business of his employer after he gained possession of the tire and was acting in the scope of his employment was clearly a question for the decision of the jury, and the trial court had no right to determine the question as a matter of law under the evidence in the case. We think, therefore, that the contention of appellant company that Smith was engaged solely about the business of assisting the officers in the discharge of their duties and was not engaged in furthering the business of his employer is unsound.

If a servant steps aside for purposes of his own and does an act not connected with the master's business the latter is not liable, "but if the servant continues about the business of the employer, adopts methods which he deems necessary, expedient or convenient, and the methods adopted prove hurtful to others, the employer is liable." [18 R. C. L., page 796, sec. 254.]

The facts and circumstances of each individual case must be taken into account in determining the application of the rule of *respondeat superior*, and in deciding whether the case presents a proper issue of fact arising on scope of employment. Whether a servant is in fact acting within the scope of his employment is ordinarily a question for the jury, and such issue was very properly put to the jury in the instant case. Our conclusion, and all that has been said, is not out of harmony with authorities cited by appellants and is supported by the following cases: State ex rel. Shaw Transfer Co. v. Trimble et al. (Mo. Sup.), 250 S. W. 384, 386; Burke v. Shaw Transfer Co., 211 Mo. App. 353, 243 S. W. 449; Moland v. Morris & Co., 212 Mo. App. 1, 10, 248 S. W. 627; Simmons v. Murray, 209 Mo. App. 248, 234 S. W. 1009; Maniaci v. Interurban Express Co., 266 Mo. 633, 182 S. W. 981; Flynn v. Burgess, 259 S. W. 149; Boroughf v. Schmidt, 259 S. W. 881; Scherer v. Bryant, 273 Mo. 596, 201 S. W. 900; Haehl v. Wabash Ry. Co., 119 Mo. 325, 24 S. W. 737; Gosselin v. Yellow Cab Co., 29 S. W. (2d) 186; State ex rel. Gosselin v. Trimble et al., 41 S. W. (2d) 801, 804.

It is strenuously urged that the verdict on the first count of the petition for the assault is excessive and that the court erred in failing to grant a new trial for that reason. Numerous cases are cited where verdicts of less amount have been rendered for more serious injuries than plaintiff sustained, and it is "earnestly submitted" that under the general understanding of the bar and the history of verdicts in the appellate courts this verdict is outrageously excessive. What juries may have done in other cases cannot control the question raised. The question is simply this: Is the verdict so excessive as to require interference in behalf of justice? The rule as usually stated is that the verdict must be such as to shock the conscience, which we deem to mean no more than a patent appearance of the

commission of a wrong. Conscience sustains a shock at the sight of any wrong. If it plainly appear that the jury was too liberal and that the trial court failed to act when it should have interposed, then the appellate court will interfere.

The evidence of injury has not been stated. That favorable to the plaintiff discloses that he was violently assaulted without provocation; that he was knocked down and rendered unconscious for a short period and was again struck two or three times in the face while he was endeavoring to rise. Smith delivered the blows. Plaintiff sustained a severe cut under his left eye about two and one-half inches in length, and the police surgeon sutured the wound with six stitches. This wound left a permanent scar and resulted in an involuntary twitching of the muscles on the side of the face and of the eyelid, and a drooping of the left eyelid on account of an injury to the nerves and muscles, and the eye will not close tightly. The medical evidence shows that the condition is permanent and that "usually a lid of that kind will drop more in time." There was evidence that the sight of the left eye was fifteen-twentieths as compared with twenty-twentieths in the other eye, but there was no showing that the injury caused the difference. In addition to the injury of the face, plaintiff sustained bruises, hurts, and sprains to his left arm, hand, and wrist; and an injury to his back which caused him pain for a week. His arm was badly swollen and was placed in splints. There was no showing of any loss of time or of earning capacity except that which might be inferred. Plaintiff continued to attend to business as usual. Under the foregoing we are not prepared to say that the verdict is excessive and that the court erred in failing to interfere. Bodily injury and physical pain are not the only elements of damage in such a case. Mental distress and humiliation may be taken into account. [Stewart v. Watson, 133 Mo. App. 44, 49, 112 S. W. 762; Edelman v. Wells, 242 S. W. 990.]

It does not appear that the jury was swayed by passion or prejudice or was misled as to the measure of damages. A less amount may have satisfied the injury, but the amount to be awarded was peculiarly within the province of the jury under the sanction of the presiding judge. [5 C. J., p. 709.] No exemplary damages were allowed and from this it would appear that the jury was not disposed to administer punishment, but was endeavoring merely to award reasonable compensation.

The verdict and judgment on the second count for false arrest cannot stand. It is urged that the instruction submitting the question of liability on this count was erroneous, and it is so because it fails to require a finding that the acts of defendants were wrongful, malicious, unlawful and without probable cause as stated in the petition. Where plaintiff characterizes an assault he must prove it as alleged and require the jury to so find. [Hill v. Kresge, 202 Mo. App. 385,

217 S. W. 997; Billingsley v. Kline Cloak Co., 196 Mo. App. 534, 196 S. W. 415.]

But we are of opinion that plaintiff had no right under the evidence to go to the jury on the charge that defendants caused the arrest. There is no substantial evidence to support the finding required. The only testimony in the record which could in any manner be construed to be a direction or a request from Smith that the officers make the arrest was the testimony of Posey heretofore set out, and all that it amounts to is this: "I believe he said take them both down and lock them up." There is no showing as to when Smith made this remark, if he made it. In connection with other testimony in the case in reference to alleged remarks made by Smith after Posey was under arrest, it would appear that the remarks were all made at the same time and after the officers had made the arrest on their own initiative as testified to by them. There was ample evidence to justify the arrest which was not controverted. There was no denial that Posey had the iron weapon in his hand and was approaching one of the officers when he was seized by the other, and there is no denial that Mason interfered in the action of the officers in arresting Posey and in their endeavor to place him in the police car. Verdicts and judgments without substantial evidence to support them should be set aside.

The conclusion is that the judgment on the first count of the petition should be affirmed, and that the judgment on the second count of the petition should be reversed. The Commissioner so recommends. *Campbell*, C., concurs.

PER CURIAM:—The foregoing opinion of BOYER, C., is adopted as the opinion of the court. The judgment on the first count is affirmed, and the judgment on the second count is reversed. All concur, except *Arnold, J.*, absent.