255 S.W.2d 132 (1952)
DAVENPORT
v.
ARMSTEAD et al.
Nos. 21717, 21718.
Kansas City Court of Appeals. Missouri.
December 8, 1952.
*133 Harry A. Hall, Kansas City, for appellants.
Eugene C. Jeter, Warren S. Earhart, Kansas City, for respondent.
BROADDUS, Presiding Judge.
This is a suit for slander. Plaintiff recovered a verdict and judgment for $1000 actual and $4000 punitive damages and defendants have appealed.
*134 The facts show that plaintiff, a former policeman, on May 4, 1949 was remodeling a residence property at 8204 Holmes Street, Kansas City, Missouri. The defendant, Frank Quinlan Construction Company was constructing the Jewish Home for the Aged located at 78th and Holmes Street and defendant, George W. Armstead, was its superintendent in charge of construction. On May 5, 1949 Armstead arrived on the job around 7:30 a. m. and discovered someone had broken the lock on the tool shed and a Skilsaw was missing. The police were notified and officers Frank Hanna and Joe Hill arrived about 9:30 a. m. to investigate the matter. They inspected the tool house and were advised that Ed Smith, a contractor who had been there earlier that morning to bid on grading work, had reported he had seen a man, who stated he was a plumbing inspector, leave the job driving a dark panel Chevrolet Truck. The police asked Armstead if he knew of a truck answering that description in the neighborhood. Armstead told them that a man, who later proved to be the plaintiff, was remodeling a house several blocks south who owned a truck answering that description and had been there on the job several times to sell lumber, pipe fittings and a skilsaw. The officers had also seen plaintiff's truck and advised Armstead to get the number of the missing skilsaw and they would cruise around the neighborhood. About two hours later they returned and advised Armstead they had located the truck and thought they heard the saw and asked Armstead to get in the police car and go with them to identify the skilsaw. They drove to plaintiff's home and the officers and Armstead got out. Plaintiff permitted the officers to look around and they told him that a skilsaw had been stolen and that a truck answering the description of his truck had been seen at the construction job that morning, and asked him if he had been by the construction job that morning, and was advised by plaintiff that he had. The skilsaw was not found. While the officers and the plaintiff were standing in the yard, Armstead said, "You know God damn well you stole that saw." They then got in the police car intending to go to see if Ed Smith could identify the plaintiff as the person he had seen that morning on the job. When Armstead informed the officers that Smith lived in Kansas, the matter was dropped and plaintiff got out of the car. Armstead in a loud voice told Hill "That is the S. O. B. that took the saw." The officers acted in a courteous manner in making the investigation. Plaintiff was not threatened with arrest or intimidated in any way by them. Armstead did not ask the officers to search plaintiff's house or truck or to arrest him. The officers took Armstead back to the construction job.
Defendants' first contention is that the court erred in failing to sustain their motions for directed verdicts. This claim is (a) that the alleged slander was absolutely privileged but, if not (b) it was, in any event, qualifiedly privileged.
The class of absolutely privileged communications is narrow. And the rule recognized, generally, is that communications to a law enforcement officer for the purpose of helping to bring a criminal to justice are not absolutely privileged. 33 Am.Jur. pp. 123 and 136, 53 C.J.S., Libel and Slander, § 114, p. 190.
Was the alleged slander qualifiedly privileged? Defendant Armstead testified that he did not tell the police that he "suspected" plaintiff Davenport of having been the thief; that he "didn't have any idea who stole the saw"; and that he did not "make any charge or accusation about Mr. Davenport taking the saw." Defendants' amended answer stated: "For further answer defendants allege that any statements made were privileged and made during the course of a police investigation for which these defendants would not be liable."
In the case of Perdue v. Montgomery Ward & Co., Mo.App., 100 S.W.2d 341, 343, according to plaintiff's testimony, one Johns, defendant's employee, accused her of stealing a coat. In the testimony of Johns was the following:
"Q. Did you charge her with theft? A. No, sircertainly not.
*135 "Q. Did you, in any manner insinuate to her that you felt that she had stolen the coat? A. No, sirin no manner whatever."
In ruling upon defendant's contention that the trial court should have directed a verdict in its favor, this court said:
"It is the defendant's theory that the defamatory words spoken by Johns were qualifiedly privileged; that the occasion was one of privilege; and that the words were spoken in good faith and without malice.
"In the case of Mock v. American Ry. Exp. Co., Mo.App., 296 S.W. 855, 858, the defendant's agent, Long, was under duty to protect the defendant's shipment of merchandise. While performing that duty, Long said to the plaintiff in the hearing of another employee of the defendant, `You delivered this shipment and deliberately stole it.' The defense was denial and privilege. In deciding the question of privilege the court said: `We fail to see how it can be successfully contended that there is any qualified privilege present in this case. Defendant's own testimony shows that Long did not believe to be true the accusation he made against plaintiff.' In speaking of the defense of privilege, the court in the case of Warren v. Pulitzer Publishing Co., 336 Mo. 184, 200, 78 S.W.2d 404, 412, said: `Likewise, since there is no right to knowingly spread false facts about anyone there can be no question of privilege to do that.'
"In the case of Conrad v. Allis-Chalmers Mfg. Co., 228 Mo.App. 817, 73 S.W.2d 438, 449, one of the defendants, the writer of the alleged libel, testified in effect that at the time he wrote the libel he did not believe that the statements therein were true. In deciding the question of privilege this court, speaking through Judge Reynolds, said: `There could, then, be no good faith in writing it (libel) or privilege or justification accorded it in any event, whether * * * as a comment or an alleged fact.'
"The defendant's answer alleges that whatever words were in fact spoken by Johns were `uttered in good faith and without malice toward the plaintiff; * * * that whatever utterance was made by him was made in good faith in the performance of the duties of his employment. If it were true that Johns spoke the defamatory words, believing as he said he did that plaintiff was not guilty of a theft, then his testimony disproves these essential allegations. It must be borne in mind that the jury by its verdict said that Johns knowingly, falsely, and maliciously spoke the words attributed to him. If in fact, and in so far as this court is concerned it is a fact, Johns, notwithstanding he knew or believed that the plaintiff was not guilty of a theft, nevertheless said in effect, that she was a thief. The accusation in these circumstances was not privileged.
"It may truly be said upon the authority of the decisions in this jurisdiction that, on an occasion such as the one involved in the instant case, a person who knowingly and falsely published that another is a thief cannot when brought into a court of competent jurisdiction to answer for the wrong, escape liability therefor upon the ground that the occasion was a privileged one or that the utterance was privileged or qualifiedly privileged."
The above case which, in our opinion, is decisive upon this point was transferred to the Supreme Court and there the opinion of this court was sustained. 341 Mo. 252, 107 S.W.2d 12.
Defendants' second contention is that the court erred in giving plaintiff's Instruction I. They say: "There is no evidence whatever that Armstead charged plaintiff with a burglary or of breaking into the office, nor is there any evidence whatever that the skilsaw was valued at $165. Plaintiff must plead and prove the slander as alleged."
The instruction requires the jury to find that Armstead, "in the presence and hearing of Frank Hanna and Joe A. Hill, spoke *136 of and concerning the plaintiff, the following words, to-wit: `You know damn well you took that saw' or `You know God damn well that you stole that saw', or 'That's the son-of-a-bitch that took the saw', and that by the use of such language the defendant, George Armstead, intended to and did charge and accuse plaintiff with having been guilty of larceny and burglary and more particularly of having broken into the office of the Frank Quinlan Construction Company and taking unlawfully and stealing an 8-inch skilsaw of the value of $165 * * *."
There was substantial evidence that defendant Armstead spoke of and concerning the plaintiff the exact words mentioned in the instruction. The undisputed evidence was that the lock on the door of the office of the Construction Company had been broken off, and that someone had entered the office and made off with the skilsaw. The only issue was whether or not the alleged slanderous words were spoken by Armstead. The case was tried by both sides on the theory that if the words were spoken they imputed to plaintiff guilt of burglary as well as larceny.
The fact that the evidence disclosed the value of the saw to be $172, whereas the instruction placed it at $165, was immaterial. The felonious taking of goods valued at either amount would constitute the same degree of larceny, to-wit: grand larceny.
The language contained in the remaining portion of the instruction, which defendants say is erroneous, met with the approval of our Supreme Court in the case of Minter v. Bradstreet Co., 174 Mo. 444, 478, 73 S.W. 668. Instruction I, in our opinion, contained no error prejudicial to defendants.
Defendants next assert that Instruction II given on plaintiff's behalf was erroneous. No authorities are cited in support of this contention. The instruction was a submission to the jury of defendants' defense of privilege. It told the jury, in effect, that the defendants were claiming privilege and that the statements mentioned in evidence were privileged if made to police officers investigating a crime, and if made in good faith, without actual malice, and with reasonable or probable grounds for believing them to be true. As stated in 53 C.J.S., Libel and Slander, § 89, p. 143, qualified privileges are "communications made in good faith, without actual malice, with reasonable or probable grounds for believing them to be true". And in the case of Peak v. Taubman, 251 Mo. 390, loc. cit. 423, 158 S.W. 656, at page 665, the court said: "in the latter [qualified privileged communications] the burden is upon the defendant to show that they were uttered without malice, hatred, or ill will toward the plaintiff." In our opinion the instruction was proper.
Defendants urge that Instruction III, which authorized the assessment of punitive damages, is erroneous. They say this is so because it did not require the jury to find that the defendants were guilty of "express or actual malice." The answer to the contention is found in the opinion of this court in the case of Byrne v. News Corp. and Young, 195 Mo.App. 265, loc. cit. 277, 190 S.W. 933, at page 937, where, it is said: "for, whatever may be the rule in other jurisdictions, the rule in Missouri is that the jury may award punitive damages based merely on malice implied by law. They are not required to find actual or express malice before they can award punitive damages." (Citing cases.) Our holding in the Byrne case was approved by the Supreme Court in Coats v. News Corporation, 355 Mo. 778, 197 S.W.2d 958, loc. cit. 963.
Defendant Quinlan Construction Company contends that the court erred in not sustaining its motion for a directed verdict because Armstead was not acting as its agent.
The question is, was Armstead at the time he uttered the slanderous words acting in the line of his employment about his master's business and seeking to accomplish his master's purpose? The facts and circumstances of each case must be taken into account in determining the application of the rule of respondeat superior, *137 and in deciding whether the case presents a proper issue of fact arising on scope of employment. Whether a servant is, in fact, acting within the scope of his employment is ordinarily a question for the jury. Mason v. Down Town Garage Co., 227 Mo. App. 297, 53 S.W.2d 409.
In State ex rel. Gosselin v. Trimble, 328 Mo. 760, 41 S.W.2d 801, 802, the Supreme Court approved the following statement of this court: "If there is any evidence which would justify a jury in finding that the assault made on the plaintiff was incident to an attempt upon the part of defendant's driver to do his master's business, then we must hold that the case was for the jury."
In the case at bar Armstead was the superintendent of construction of the corporate defendant with general authority to do all things necessary and incidental to the work of the master. He was responsible for "looking after", "locking up", and being "accountable" for the employer's equipment, including the skilsaw. The evidence further showed that defendants needed the saw on the job, and that its loss upset the work schedule. The inference is strong that Armstead went to the place where plaintiff was known to be in order to recover the saw for his employer for use in the work in which he (Armstead) was employed.
In Whiteaker v. Chicago R. I. & P. Railroad, 252 Mo. 438, 458, 160 S.W. 1009, 1014, it is said: "The general rule is that the maxim, respondeat, applies when the servant, in the line of his employment about his master's business, seeks to accomplish his master's purposes and in doing so acts negligently, or willfully and maliciously, or even contrary to his orders or criminally in some instances." And the rule that there can be no agency to slander, and thus a corporation cannot be guilty of slander has long since been exploded in this State. Fensky v. Maryland Casualty Co., 264 Mo. 154, 174 S.W. 416.
It is the settled rule that a motion for a directed verdict can be sustained only when the facts in evidence and the legitimate inference therefrom are so strongly against the verdict as to leave no room for reasonable minds to differ. In our opinion, under the evidence in the instant case, the court did not err in failing to direct a verdict for the Construction Company. Our holding in this respect is supported by the case of Simmons v. Kroger Grocery & Baking Co., 340 Mo. 1118, 104 S.W.2d 357, and the cases discussed therein. The cases cited by defendant Construction Company are distinguishable on their facts from the case at bar.
The last assignment is that the verdict is excessive. The test is whether or not the size of the verdict is such as to shock the conscience of the court. Rinderknecht v. Thompson, 359 Mo. 21, 220 S.W.2d 69. We are not prepared to say that the verdict for actual damages is unwarranted. Plaintiff testified that as a result of the false accusations he became nervous and up-set, lost weight, and could not do his work properly; that his neighbors, with whom he had always been on friendly terms, thereafter seemed to avoid him. It has been said that in cases of this kind the courts tenaciously hold the parties to the damages found by the jury, because there is no scale by which the damages can be graduated with certainty. They admit of no other test than the intelligence of a jury governed by a sense of justice. Minter v. Bradstreet Co., supra. The verdict was approved by an able and experienced trial judge. Taking into consideration the reduced purchasing power of the present dollar, we are unable to say under all the circumstances that a verdict for $1000 actual damages in this case is excessive.
As to punitive damages the rule is as stated in Seested v. Post Printing & Publishing Co., 326 Mo. 559, 31 S.W. 2d 1045, 1054: "the giving or withholding of punitive damages, as well as the amount thereof, lies wholly within the discretion of the jury." Unless it plainly appears that there has been an abuse of such discretion, a court is not justified in interfering with an assessment of punitive damages. *138 We find nothing in the transcript which indicates passion or prejudice on the part of the jury.
The judgment should be affirmed. It is so ordered.
All concur.